# NO. 12-10-00122-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAIRD HILL SALT WATER DISPOSAL, LTD. AND BOLTSERV., INC., APPELLANT S* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW #2* |
| *EAST TEXAS SALT WATER DISPOSAL, INC., APPELLEE* | *§* | *GREGG COUNTY, TEXAS* |

## *OPINION*

This is an appeal in a condemnation case. The trial court granted a partial summary judgment determining that East Texas Salt Water Disposal, Inc. (ETSWD), had the authority to condemn the two acres on which the Bass #5 salt water disposal well (Bass #5) owned by Laird Hill Salt Water Disposal, Ltd. and Boltserv, Inc. (Laird Hill)[1] was located. The issues of compensation and trespass were then tried to a jury, who determined that there had been no trespass by ETSWD and awarded Laird Hill $24,700.00 for the Bass #5. In its first issue, Laird Hill appeals the trial court's partial summary judgment. In its second issue, which we need not address if we sustain the first, Laird Hill attacks the admission of evidence and the charge in the jury trial. We affirm.

## BACKGROUND

### East Texas Oil Field

The Woodbine Formation, also known as the East Texas Oil Field (Field), is the largest and most prolific oil reserve produced in the contiguous United States. The Field is

---

[1] Laird Hill Salt Water Disposal, Ltd. and Boltserv, Inc. are related companies with the same owners.

approximately forty miles long and between five to seven miles wide. Since its discovery in 1930, the Field's primary oil recovery source consists of a strong "water drive," whereby salt water in the formation creates pressure to move oil from the reservoir to the wellbore and ultimately to the surface. To produce a barrel of oil from the Field, ninety-two barrels of salt water must be extracted.

By the late 1930s, a crisis had developed in the Field because there was nowhere to store the large amount of salt water being brought to the surface, and it had begun to seep into the area's fresh water supply. In 1942, ETSWD was established to dispose of the salt water in disposal wells specifically drilled and constructed to safely store this water and keep it from polluting the area's fresh water supply. Since its founding, ETSWD has provided this service to the producers in the Field on a cost basis. It has constructed over 700 miles of pipeline throughout the Field to transport salt water to its disposal wells in an efficient and environmentally sound manner for disposal. Dozens of disposal wells have been drilled over the decades to dispose of the millions of gallons of salt water produced daily in the Field.

**Bass #5**

In 1985, ETSWD leased the approximately two acre tract that is the subject of this suit from Jimmy Mankins and his wife, Virginia, for ten years for the purpose of operating a salt water disposal well. ETSWD exercised an option to extend the lease for an additional five year term in 1995, and the parties thereafter amended the lease to provide for an additional five year term to expire on June 4, 2005. Near the expiration of the lease in 2005, Glenn Phillips, the attorney for the Mankinses, informed ETSWD through its land manager, Hollis Wood, that they had an offer of $70,000.00 for the two acres. When ETSWD balked at paying this amount for the two acres, Phillips sent the following letter, which in pertinent part read as follows:

> This letter will confirm that Mr. and Mrs. Mankins have agreed to extend the termination date of the above-described lease until June 30, 2005, conditioned upon East Texas Salt Water Disposal Company paying rental for that period in the amount of $100.00. During this time we are going to have Mr. Lawler give us some idea of the value of that property and I will contact you after I hear from Mr. Lawler.

There was a dispute between the testimonies of Phillips and Wood over whether any negotiations continued between the parties following this communication. Wood testified that he never heard from Phillips again about a purchase price for the two acres. Phillips testified that he

and Wood negotiated during July and August 2005 and that ETSWD's top offer was $10,000.00, which the Mankinses considered inadequate. ETSWD continued to operate the Bass #5 from July through November and paid $100.00 each month to the Mankinses.

On November 23, 2005, the Mankinses sold the two acres to Laird Hill for $48,000.00. Laird Hill is an ETSWD competitor in the salt water disposal industry. The two companies' competitive positions in disposing of salt water were as follows:

|  | ETSWD | Laird Hill |
|---|---|---|
| Charged price per barrel of salt water disposed | 4.6¢ | $1.30 – $1.70 |
| Barrels of salt water disposed of daily | 980,000–1,000,000 | 3,700–5,500 |
| Number of salt water disposal wells operated | 88 | 1 |
| Method of transporting salt water to disposal well | Pipeline (700 miles) | Trucks (130 barrels per truckload) |
| Formations served | Woodbine (solely) | Cotton Valley, Travis Peak, Haynesville Shale (primarily) |

On December 6, 2005, Kevin Key, general manager for Laird Hill, along with Phillips, met with Jim Schneider, field superintendent for ETSWD, regarding the operation of the Bass #5 under Laird Hill's ownership. The testimony of Schneider, Key, and Phillips conflicted as to what happened at this meeting, but on December 14, 2005, Key sent a letter to Schneider, which in pertinent part stated the following:

> As we indicated in the meeting, we would like to work an arrangement that is mutually beneficial for Laird Hill and East Texas Salt Water, but if that is not possible we intend to proceed with our plans to expand the facility early next year. Laird Hill understands that your firm will need some time to disconnect this well from your operations, but we need to know your target date for the disconnect. We will work with you on this issue to the greatest extent possible.

No communication occurred between Key and Schneider for three weeks following the December 14, 2005 correspondence. Then, on January 4, 2006, Key sent a letter to Schneider, which included the following:

We are in the process of placing a fence around our two acre tract upon which the Bass well bore is located.

. . .

Please consider this letter as formal notice that Laird Hill Salt Water is erecting a gate at the entry to the two acre tract. No one, including East Texas Salt Water, has authority to enter upon the two acre tract without contacting me in advance.

## Condemnation Proceedings

One week after Key's letter, ETSWD filed its petition to condemn the two acres. Special commissioners, in the standard administrative proceeding for condemnation proceedings, entered an award of $22,000.00 to Laird Hill for the two acres. Laird Hill immediately filed a written objection stating that the award was inadequate. This objection converted the administrative proceeding into a cause before the trial court.[2] Nearly four years later, in February 2010, both parties filed motions for partial summary judgment. The trial court signed an order on these two motions. The following portions of the order are pertinent to this appeal.

(1)     ETSWD's condemnation is proper;

(2)     ETSWD is a well waste water corporation with the power of eminent domain;

(3)     ETSWD made a determination that the condemnation was necessary to serve a public use;

(4)     ETSWD's activity serves a public use;

(5)     ETSWD's determination of necessity and public use was not made in an arbitrary, capricious, bad faith, or fraudulent way;

(6)     ETSWD does not discriminate;

(7)     ETSWD has the right for six months after the end of the final termination of the lease to remove or plug any saltwater disposal wells;

(8)     Laird Hill's request for declaratory relief as to paramount importance or purpose fails and is denied;

(9)     Laird Hill is not entitled to lost profits as damages under condemnation; and

(10)    Laird Hill is not entitled under condemnation to the value of the improvements made on the Property by ETSWD.

---

[2] *See* **Hubenak v. San Jacinto Transmission Co**., 141 S.W.3d 172, 179 (Tex. 2004).

A jury then heard evidence on whether ETSWD had trespassed on Laird Hill's two acres and on the value of the two acres. The jury determined that no trespass had occurred and the two acres condemned was worth $24,700.00. This appeal followed.

## SUMMARY JUDGMENT

In its first issue, Laird Hill contends that the trial court erred in its order granting summary judgment, challenging the above ten statements in its order granting ETSWD's motion for partial summary judgment.

### Standard of Review

We review the trial court's summary judgment de novo. *Valence Oper. Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Here, each of the parties moved for a traditional partial summary judgment. *See* TEX. R. CIV. P. 166(a)(c). The standards for reviewing a traditional summary judgment are well established: (1) the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the nonmovant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When, as here, both sides move for a traditional summary judgment and the trial court grants part of one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment that the trial court should have rendered. *See Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). The court can consider one party's evidence in support of the other party's motion. *Tex. Dep't of Pub. Safety v. Abbott*, 310 S.W.3d 670, 673 (Tex. App.–Austin 2010, no pet.) (citing *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex. 1969)).

### ETSWD's Authority to Condemn

In its first specific attack on the court's summary judgment, Laird Hill contends that ETSWD did not properly authorize the condemnation. The issue of a condemnor's authority to condemn is a legal question. *Harris Cnty. Hosp. Dist. v. Textac Partners I*, 257 S.W.3d 303, 316 (Tex. App–Houston [14th Dist.] 2008, no pet.). The Texas Constitution states when a citizen's property can be condemned.

Sec. 17. (a) No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:

    (1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

    . . . .

        (B) an entity granted the power of eminent domain under law. . . .
    . . . .

(d) When a person's property is taken under Subsection (a) of this section, except for the use of the State, compensation as described by Subsection (a) shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof.

TEX. CONST. art. I § 17. "A well waste water corporation may be created to gather, store, and impound well wastewater and to prevent the flow of well wastewater into a stream when the stream may be used for irrigation." TEX. NAT. RES. CODE ANN. § 111.402 (Vernon 2011). "'Well wastewater' means water containing salt or other substances produced during drilling or operating oil and other types of wells." *Id*. § 111.401. "A well wastewater corporation may condemn land or a property right necessary for a purpose of the corporation." *Id.* § 111.404(a). The summary judgment evidence established that ETSWD was a well wastewater corporation established in 1942. It therefore had the power to condemn the two acres upon which Bass #5 was located.

Laird Hill contends that ETSWD's governing body failed to properly authorize the condemnation. The power of eminent domain is granted only to the condemnor's governing body. *See **FKM P'ship v. Bd. of Regents***, 255 S.W.3d 619, 630 (Tex. 2008). A condemning authority can "act only through its governing body and cannot delegate its eminent domain power, and must manifest its official actions through orders, resolutions, and minutes." ***Whittington v. City of Austin***, 174 S.W.3d 889, 901 (Tex. App.–Austin 2005, pet. denied) (internal citations omitted). Normally, a resolution of the board of directors is the proper method for determining and declaring the public necessity that must exist to go forward with a condemnation. *See **id.*** at 903.

However, evidence of other "affirmative acts" may permit the condemnor to establish that they have made a necessity determination. *See **id***. at 904 (citing ***Maberry v. Pedernales Elec. Coop.***, 493 S.W.2d 268, 270-71 (Tex. Civ. App.–Austin 1973, writ ref'd n.r.e.) (stating

"the resolution or other action by the condemnor declaring a necessity for the taking[ ] must be introduced into evidence.")). In Texas, a governing body of a corporation may delegate many of its responsibilities to committees composed of board of directors members. *See* TEX. BUS. ORG. CODE ANN. § 21.416(a) (Vernon Supp. 2010).[3] The board of directors' power to delegate responsibilities is limited only by the corporation's certificate of formation, its bylaws, and certain enumerated statutory prohibitions not applicable here. *See id.* § 21.416(b). The power of eminent domain is not one of the prohibited functions listed in the Texas Business Organizations Code for delegation by the directors to a committee. *See id.* § 21.416(c). We see no reason why these ordinary corporate rules and norms of corporate governance should apply with less force in the condemnation context. *See **Maberry***, 493 S.W.2d at 271 (The condemnor has the "burden to show that a determination of convenience and necessity to serve the public has been made by the governing body, the board of directors, or *other authority having power to speak and act for the condemnor*.") (emphasis added).

In the instant case, Clements, acting in his capacity as ETSWD's president, originally decided that it was necessary to condemn the two acre tract. We agree with Laird Hill that Clements in his position as president of ETSWD had no express or inherent authority to authorize the condemnation proceedings. *See **Templeton v. Nocona Hills Owner's Ass'n***, 555 S.W.2d 534, 538 (Tex. Civ. App.–Texarkana 1977, no pet.). However, our analysis does not end there.

ETSWD included its corporate bylaws as part of its summary judgment evidence. Section 3.15 of the bylaws stated specifically that the board of directors could designate an executive committee. The same section of its bylaws tracked what is now Section 21.416(c) of the Texas Business Organizations Code in designating what the executive committee would not have the authority to do. Again, the power of eminent domain is not listed in ETSWD's bylaws as a power the executive committee is proscribed from exercising.

---

[3] For corporations such as ETSWD formed prior to January 1, 2006, the Texas Business Organizations Code (the Code) states that former law—i.e. the Texas Business Corporations Act (TBCA) here—applies to lawsuits filed before its mandatory application date of January 1, 2010, unless the corporation elected to adopt the Code at an earlier date. *Compare* TEX. BUS. CODE ANN. §§ 402.001, 402.003, and 402.005 *with* § 402.014 (Vernon Supp. 2010). This lawsuit was filed before that date, and the record is unclear whether ETSWD made the election to have the Code, instead of the expired TBCA, apply to it. Nonetheless, in our review of the pertinent Code section and its predecessor, the now repealed Article 2.36 of the TBCA, we conclude that the sections are substantially similar in all material respects. *Compare* TEX. BUS. CODE ANN. § 21.416 *with* TEX. BUS. CORP. ACT art. 2.36 (repealed). For ease of reference, we refer to the new Code sections in our analysis.

The summary judgment evidence also includes the minutes of the meeting of the board of directors of ETSWD held April 27, 2005. At this meeting, all eight of the members of the ETSWD board of directors were present. An executive committee of four of the eight members was unanimously approved at this board of directors meeting. The following ETSWD resolution was also part of the summary judgment evidence before the trial court:

**RESOLUTION OF THE BOARD OF DIRECTORS**

**EAST TEXAS SALT WATER DISPOSAL COMPANY**

On this 11th day of April, 2006, the Executive Committee of East Texas Salt Water Disposal Company, read, approved, and adopted the following Resolution:

"BE IT RESOLVED, that East Texas Salt Water Disposal Company requires, as a part of its business purposes and the public benefit, a certain 1.19 acre tract of land, more or less, together with a roadway and pipeline right-of-way across the Laird Hill Salt Waste Disposal 2.00 – acre tract of land situated in the W.P. Chism Survey, Abstract #36, Gregg County, Texas, for the purpose of installing, maintaining, and operating wells, pipelines, and other equipment necessary to the disposal of salt water. The Executive Committee has previously directed and authorized the President of the Company to determine the appropriate alternatives at, on and about the above referenced tract, and it is the considered judgment of this Company that the above described tract and right-of-way are required in the business purpose of the Company, and the President is hereby directed to proceed with the formal condemnation procedures."

The above constitutes a true and exact copy of the Resolution adopted and passed by the Executive Committee of East Texas Salt Water Disposal Company.

 /s/ Carter Matthews
Carter Matthews: Secretary/Treasurer

Laird Hill complains of this resolution's timing. Since it was not executed until a few months after the condemnation proceedings were filed, Laird Hill argues that it is not an effective resolution. It is not necessary for a governing board of a condemnor to have authorized the condemnation prior to the condemnation petition having been filed. ***Lin v. Hous. Cmty. Coll. Sys.***, 948 S.W. 2d 328, 334-35 (Tex. App.–Amarillo 1997, writ denied);[4] s*ee also **Swain v. Wiley Coll.**, 74 S.W.3d 143, 150 (Tex. App.–Texarkana 2002, no pet.) ("The venerable rule is that the ratification by the principal of its agent's act relates back to the time of the act.").

Laird Hill next contends that this resolution describes action taken by ETSWD's executive committee, rather than its board of directors. However, on its face, the resolution

_____

[4] In ***Lin***, a college vice-chancellor authorized the filing of the condemnation petition prior to the governing body's authorizing the condemnation proceeding. ***Lin***, 948 S.W.2d at 335.

states that it is a "Resolution of the Board of Directors" of ETSWD. The bylaws of ETSWD allowed the board of directors to delegate to the executive committee various powers that were not specifically proscribed. The power of eminent domain was not one of those powers proscribed. The resolution of ETSWD is not void on its face, although it only describes a meeting of the executive committee, rather than the full board of directors. Any of the four directors who was not a member of the executive committee had standing to void the action of the executive committee. *See Swain*, 74 S.W.3d at 148. ("An irregular resolution is not void, but simply voidable."). There being no challenge by any board member in the summary judgment evidence, the full board of directors impliedly approved of its resolution regarding the necessity to condemn the two acres. *See **Bowers Steel, Inc. v. DeBrooke***, 557 S.W.2d 369, 371-72 (Tex. Civ. App.—San Antonio 1977, no writ) ("The principle is well established that the directors . . . may ratify any act or contract of any other body or agency of the corporation [such as its executive committee] which they might have authorized in the first instance."); *see also **Petroleum Anchor Equip., Inc. v. Tyra***, 410 S.W.2d 238, 245 (Tex. App.—Dallas 1966) (stating directors may ratify unauthorized acts of its agents without any formal action by passive acquiescence as well as by affirmative action), *rev'd on other grounds*, 419 S.W.2d 829, 834 (Tex. 1967) (ratification not allowed to be asserted as a defense because not properly pleaded). Thus, even absent express authorization in the executive committee, this resolution, and the implied ratification of it by the board of directors, constitutes an affirmative act by ETSWD that established the necessity to condemn the two acre tract. The summary judgment record is thus sufficient to support the trial court's determination that Clements's action in instituting the condemnation proceeding was ratified by ETSWD's governing board.

Finally, in *Swain*, the court stated that the rule that ratification relates back to the original unauthorized act "is operative between the parties to the transaction, but it cannot be applied to defeat the rights of strangers to the transaction acquired in the intervening period between the original act by the agent or officer and the ratification." *Swain*, 74 S.W.3d at 150. In other words, the rights of third parties "trump" the attempted ratification in the following sequence of events: (1) the unauthorized act occurs, (2) a third party obtains rights in the subject of the suit, such as real estate, and (3) ratification occurs. Here, however, there is a different sequence of events: (1) Laird Hill acquired the two acre tract, (2) Clements made the unauthorized determination of necessity to condemn, (3) ETSWD's board of directors issued its resolution

through its executive committee wherein it expressly authorized the condemnation of the two acre tract; and (4) ETSWD's board impliedly ratified the resolution by its acquiescence. Therefore, Laird Hill's rights in the tract do not defeat ETSWD's ratification of its agents' actions in exercising its power of eminent domain.

**Public Use**

Laird Hill contends that ETSWD failed to establish that its taking of the two acres was for a public use. What is a public use is a question of law. *Circle X Land v. Mumford Ind. Sch.*, 325 S.W.3d 859, 863 (Tex. App.–Houston [14th Dist.] 2010, pet. denied). When the legislature delegates to an entity the power to condemn and the entity condemns the property for public use, the extent to which the property is taken is a legislative question. *Id.* at 864. The legislative declaration that the use is presumptively public is binding on courts unless the use is "clearly and palpably" private. *See id.* (citing *Hous. Auth. v. Higgenbotham*, 135 Tex. 158, 143 S.W.2d 79, 83 (1940)). The condemnor's exercise of discretion may be subject to judicial review, but only where there is a showing that the condemnor acted fraudulently, in bad faith, or arbitrarily and capriciously. *Block House Mun. Util. v. City of Leander*, 291 S.W.3d 537, 541 (Tex. App.–Austin 2009, no pet.).

Laird Hill, not surprisingly, agrees that salt water disposal is a public use. However, it contends that under the doctrine of paramount importance, ETSWD's condemnation of the two acres is inappropriate. That doctrine provides that if the condemnee can show that the condemnation would practically destroy the existing use, the condemnor must show that the necessity is so great as to make the new enterprise of paramount importance to the public that cannot be practically accomplished in any other way. *Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 617 (Tex. 2008) (citing *Sabine & E. Tex. Ry. Co. v. Gulf & Inter. Ry. Co. of Tex.*, 92 Tex. 162, 46 S.W. 784, 786-87 (1898)). Laird Hill contends that as the owner of the two acres, it had the existing public use of salt water disposal and that ETSWD had the burden of establishing that its use was of paramount importance to the public. We disagree with Laird Hill that it would be considered the primary or first user under the doctrine of paramount importance. The first occupier of the ground is entitled to all of the advantages derived from the establishment of the public use therein. *Sabine & E. Tex. Ry. Co.,* 46 S.W. at 787. Here, ETSWD had occupied the two acres as a lessee since 1985. It had constructed the Bass #5 and was therefore the first occupier of the ground with the public use of salt water

disposal. Laird Hill would be the party in this suit with the burden to establish paramount importance. It has failed to meet that burden.

## Condemnation for a Legislatively Declared Purpose

Laird Hill also contends that ETSWD has not sought to condemn the two acres for a legislatively declared purpose. It makes this argument based upon the following statute describing service to well wastewater producers:

**§ 111.405. Service to Well Wastewater Producers**

(a) A well wastewater corporation shall serve all well wastewater producers in the area in which the corporation operates to the extent the corporation has adequate facilities to gather, impound, and store well wastewater.

(b) A well wastewater corporation:

(1) shall serve a well wastewater producer in proportion to the needs of all of the producers in the area;

(2) shall charge a fair and reasonable fee for its services; and

(3) may not discriminate between different producers under similar conditions.

TEX. NAT. RES. CODE ANN. § 11.405 (Vernon 2011). Laird Hill contends that it provides salt water disposal to all producers in all formations in East Texas while ETSWD provides this service only to producers in the Woodbine Formation. It contends that this is discrimination. *See id.* § 111.405(b)(3). We disagree. Laird Hill ignores section (a) in making this argument. *Id.* § 111.405(a). A well wastewater corporation is only required to serve all wastewater producers in the area in which the corporation operates. *Id.* ETSWD has operated its pipeline only in the Woodbine Formation, which is a geographically delineated area. The record before us does not indicate that it has ever operated outside the Woodbine Formation. Therefore, Section 111.405(b)(3) only applies to ETSWD with regard to producers in the Woodbine Formation. There is no evidence in the record before us that ETSWD has ever denied salt water disposal services to any producer in the Woodbine Formation. Therefore, Laird Hill's discrimination argument fails.

## ETSWD's Actions as Fraudulent, Bad Faith, or Arbitrary and Capricious

In attacking ETSWD's authority to condemn the two acres for a public use, Laird Hill argues that ETSWD acted fraudulently, in bad faith, or arbitrarily and capriciously in

condemning the two acre tract. As we have previously stated, a condemnor's authority to condemn is a legal question. *See* **Harris Cnty. Hosp**. **Dist.**, 257 S.W.3d at 316. In the condemnation context, fraud means "any act, omission or concealment, which involved a breach of legal duty, trust or confidence, justly reposed and is injurious to another, or by which an undue and unconscientious advantage is taken of another." **Malcomson Rd. Util. Dist. v. Newsom**, 171 S.W.3d 257, 269 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (op. on reh'g). In the same context, arbitrary and capricious, like abuse of discretion, means "willful and unreasoning acting, action without consideration and in disregard of the facts and circumstances." **Id.** Bad faith in the condemnation context has been suggested to occur when the condemnor deliberately disregards a condemnee's rights. *See* **Westgate, Ltd. v. State**, 843 S.W.2d 448, 461 (Tex. 1992) (Doggett, J., dissenting).

In its first of five contentions in this section, Laird Hill contends that ETSWD made the following false statements under oath in its condemnation petition, amounting to fraud or bad faith:

- All of the wellbore and equipment for the operation of the [Bass #5] Well belongs to ETSWD.
- ETSWD is not a trespasser and it is entitled to maintain the status quo as the last peaceable possessor of the Lease Land upon which the [Bass #5] Well is located and operated. . . .
- ETSWD has tendered to the registry of the Court the agreed upon sums of $100 per month for the months of December 2005 and January 2006 to extend the terms of the Lease.

ETSWD's contention that it owned the wellbore and the equipment for the operation of the Bass #5 was legally accurate. Generally, the owner of the fee simple title to the land owns any improvements that are placed upon it. However, there is an important exception to this rule. Where one with the right of condemnation affixes improvements to the real property, the owner is not entitled to compensation for the improvements. **Nagel v. Tex. Pipeline Co.**, 336 S.W.2d 265, 266-67 (Tex. Civ. App.–Waco 1960, no pet.). The landowner, upon subsequent condemnation, is only entitled to compensation for his land, together with the reasonable rental value of the land for the period such improvements were thereon without benefit of the condemnation. **Id.** (citing **City of San Antonio v. Grandjean**, 91 Tex. 430, 41 S.W. 477, 479 (1897); **Preston v. Sabine & E. Tex. Ry. Co.**, 70 Tex. 375, 7 S.W. 825, 826 (1888)). Our supreme court has explained the reason for this longstanding exception. "Whatever may be the theory as to the foundation of the right of eminent domain, everyone holds his property subject to

that right." ***Grandjean***, 41 S.W. at 478. "A setting apart or dedication to a public use, to be effectual, need not be by deed; nor need it be evidence by the use of having been continued for any particular time." ***Id.*** at 479.

> [Since] [t]he state has inherent and paramount right to the property when needed for public purposes, the determination by the proper authority that the necessity for the taking exists and the taking, and the adjustment with the owner of the question of compensation, however effected, complete the appropriation, and devote the property to the public use.

***Id.*** When it placed the Bass #5 on the two acres in 1985, ETSWD, for all practical purposes, owned the wellbore and equipment even though the Mankinses held fee simple title to the land. This public use of the property continued even after Laird Hill purchased the real property from the Mankinses. When Laird Hill purchased the real property, it did so subject to the condemnation authority that ETSWD had received from the State of Texas. *See **Nagel***, 336 S.W.2d at 266-67.

In a related argument, Laird Hill contends that the trial court erred when it denied its ground for summary judgment that the "statute of frauds bars ETSWD's claim of ownership to the wellbore." Laird Hill argues that ETSWD's written lease merely granted ETSWD the right to "use" the two acre tract, and there was no conveyance of ownership to the land or "any permanent alteration to the land such as the wellbore to ETSWD." And, Laird Hill's argument continues, even if such a document existed, it was not in writing or signed by the party to be charged. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2009); TEX. PROP. CODE ANN. § 5.021 (Vernon 2004). However, as we have already seen, a condemnor such as ETSWD who entered the land and made improvements owns the improvements for all practical purposes. *See **Nagel***, 336 S.W.2d at 266-67. Thus, the Bass #5 and its appurtenances are owned by ETSWD, and the trial court properly overruled Laird Hill's statute of frauds argument.

As to the next alleged false statement made by ETSWD, Laird Hill contends that there was a fact issue concerning whether ETSWD was a trespasser on the two acres between the time the property had been purchased from the Mankinses and when ETSWD filed its petition for condemnation. The trial court did not rule on this issue in its partial summary judgment  and did in fact, at the request of Laird Hill, allow it to be submitted as a special issue to be determined by

the jury. The jury determined that ETSWD had not trespassed on the real property and that finding, which Laird Hill has not appealed, is binding on it.

With regard to ETSWD's condemnation petition stating that the lease payments for December 2005 and January 2006 had been agreed upon, there is nothing in the record to indicate that this statement was fraudulent, in bad faith, or arbitrary and capricious. The affidavits of Schneider and Wood that were part of the summary judgment evidence indicated their good faith belief that Key in the December 6 meeting had agreed to continue the lease on a month to month basis as it had been with the Mankinses until something could be worked out. We construe pleadings liberally. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We can find nothing in the allegation with regard to ETSWD's pleadings as alleged by Laird Hill that it was filed fraudulently, in bad faith, or arbitrarily and capriciously.

In Laird Hill's second allegation under this section, it states that there was a statutory prerequisite requiring ETSWD, before it filed its condemnation petition, to make an offer to pay Laird Hill for the taking of the two acres. *See* TEX. PROP. CODE ANN. § 21.012(b)(4) (Vernon Supp. 2010). Our supreme court has said that this "unable to agree" requirement requires minimal evidence. *See Hubenak*, 141 S.W.3d at 185. Here, there was extensive evidence that when the written lease between the Mankinses and ETSWD was drawing to a close, there were negotiations and counteroffers between the parties for the purchase of these two acres. Phillips testified that ETSWD had made no better than a $10,000.00 offer for the property. The Mankinses indicated they wanted $70,000.00 for the property. Key's December 14 and January 4 letters to Schneider indicated there was not going to be any agreement on a sale between ETSWD and Laird Hill regarding the two acres. There is sufficient evidence to establish that ETSWD met this requirement before it filed its condemnation petition.

Thirdly under this section, Laird Hill claims that ETSWD's board of directors did not properly authorize the filing of the condemnation proceeding against Laird Hill before it filed its condemnation petition. Laird Hill contends that the summary judgment evidence shows that ETSWD's President, Ricky Clements, made this decision. In its related fourth contention under this section, Laird Hill argues that ETSWD could not allow its governing board to delegate the power of eminent domain to its executive committee, the committee did not have the authority to condemn, and implicitly, that the condemnation was void. Laird Hill argues that ETSWD's attempted actions to retroactively ratify the condemnation decision show that ETSWD acted

fraudulently, in bad faith, or arbitrarily or capriciously. However, as we have concluded earlier, the governing body of ETSWD, through a corporate resolution, did authorize the condemnation proceeding on April 11, 2006.

Fifth, and lastly under this section, Laird Hill contends that Clements testified at an injunction hearing in January 2006 that ETSWD had other wells that could be used to dispose of the salt water that it was pumping into the Bass #5, implying that such a statement means that there was no public necessity to condemn the well. We have reviewed Clements's testimony at the injunction hearing and determined that Laird Hill has taken Clements's statement out of context. Previously in the injunction hearing, Clements had testified as to the necessity for the capacity of ETSWD's system of pipelines and disposal wells to have the Bass #5 online. He testified that ETSWD's salt water disposal well system was close to full capacity and that it was necessary to have the Bass #5 in operation. Clements also testified that there were currently forty-seven oil and gas wells producing salt water that went into their pipeline system. He said that there were thirty-two other oil and gas wells which could be brought into production in the Woodbine Formation. The specific question that Laird Hill points to in making this contention was that Clements was asked, "Do you have any other salt water wells in that location that you could pump this water into?" Clements answered, "Yes." However, we conclude that the trial court was correct in determining that this testimony concerned whether the pipeline system physically allowed salt water to be pumped into any of the other eighty-seven salt water disposal wells in the system, rather than the capacity issue of whether the Bass #5 was needed for ETSWD's salt water disposal system.

## ETSWD's Rights Upon Termination of Lease

Laird Hill complains that the trial court erred in granting summary judgment that ETSWD had the right for six months after the end of the final termination of the lease to remove or plug any salt water disposal well and to enter upon the premises and remove any and all property and equipment owned on the premises by ETSWD. As we have already determined, a condemnor that places improvements upon real property owns those improvements. Further, the court's holding comports with the language of the lease between ETSWD and the Mankinses, which stated that

> [u]pon final termination of this lease, and within six (6) months thereafter, Grantee shall have the right to enter upon the premises and remove therefrom any and all property and equipment belonging to it or heretofore or hereafter placed on said above-described land by it.

Lessees are entitled to enforce lease provisions upon the termination of a lease. *See Fike v. Riddle*, 677 S.W.2d 722, 727 (Tex. App.–Tyler 1984, no pet.) (stating that oil and gas lessee has right to enforce similar provision as that in the instant case absent certain equitable circumstances not present here).

## Lost Profits Based Upon Trespass Claim

Laird Hill argues that it is entitled to lost profits for the period during which ETSWD was trespassing upon its property. Laird Hill's argument is predicated on its earlier contentions that it owned the wellbore for the Bass #5 well and further that the trial court erred in concluding that ETSWD's condemnation of the two acre tract was proper. We have overruled these contentions. Nevertheless, lost profits as a separate item of damages over and above the fair market value of the land taken are not recoverable. *See State v. Travis*, 722 S.W.2d 698, 699 (Tex. 1987). Additionally, the trial court submitted Laird Hill's trespass claim to the jury, and it made a finding that no trespass had occurred upon the property prior to the filing of the condemnation proceeding. Thus, Laird Hill is not entitled to lost profits.

## Objections to Summary Judgment Evidence

Laird Hill contends there were twenty-one statements in ETSWD's affidavits that the trial court erroneously admitted as summary judgment evidence over its objection. Five of the statements were made in affidavits by Clements primarily regarding the background and operation of the field. The other sixteen of the statements related to the issue of ETSWD's trespass, as alleged by Laird Hill.

Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). To reverse a judgment based on a claimed error in admitting or excluding evidence, the party must show that the error probably resulted in an improper judgment. *Id.* In determining if the excluded evidence probably resulted in the rendition of an improper judgment, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Id.*

We have reviewed the entire record regarding these twenty-one statements about which Laird Hill complains. Clements's five statements regarding the history and background of the Field are duplicated throughout the record, particularly in Laird Hill's appraiser's report, which was part of the summary judgment evidence. *See Dixie Dock Enters. v. Overhead Door Corp*., No. 05-01-00639-CV, 2002 WL 244324, at *4 (Tex. App.—Dallas Feb. 21, 2002) (not designated for publication) (concluding objection to certain summary judgment evidence is waived if complaining party failed to object to same or similar evidence establishing same point elsewhere in summary judgment record) (citing *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984)). Further, we cannot determine that Clements's statements controlled on any material issue dispositive to this case. *See Interstate Northborough*, 66 S.W.3d at 220. Finally, with reference to the sixteen statements relating to Laird Hill's trespass claim, we note that the trespass issue was fully tried before the jury. Therefore, these statements had no effect on the trial court's summary judgment rulings.

Laird Hill's first issue is overruled.

## ADMISSION OF EVIDENCE AND JURY CHARGE

Laird Hill's second issue asks whether, "[a]s a result of its erroneous partial summary judgment, did the trial court err in excluding evidence in submitting the case to the jury?" Because we have overruled Laird Hill's first issue, we need not address this issue. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Laird Hill's first issue, and having concluded that its second issue is unnecessary to the disposition of this appeal, we *affirm* the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered June 30, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)