# NO. 12-17-00343-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ECHO LAKE PILOTS ASSOCIATION, INC.,*<br>*APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ECHO LAKE PROPERTY OWNERS ASSOCIATION, INC.,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Echo Lake Pilots Association, Inc. (the Pilots Association) appeals the trial court's grant of summary judgment in favor of Echo Lake Property Owners Association, Inc. (the POA). It presents four issues on appeal. We affirm.

### BACKGROUND

Echo Lake is a private sportsman's club and residential community consisting of single family homes around a scenic lake with common areas for its residents' use. Property owners are members of the POA which is managed by a Board of Directors (the Board). Property covenants and restrictions have been in place since the development's inception. The Pilots Association was formed by several POA members who owned aircraft and sought to develop a private airstrip within the development.

In 2003, the Pilots Association and the POA entered into a lease. The lease allowed the Pilots Association to rent acreage within one of the common areas to maintain and operate a runway, taxi-way, hanger space, and parking ramp for its aircraft. The lease term was for fifteen years at a rate of $1.00 per year with a specified termination date of November 1, 2018. The lease provided

that the property was to be used as a private airstrip and aircraft storage facilities for the exclusive use of the Pilots Association's members.

In 2010, a document entitled "Covenants and Restrictions On and For Echo Lake" was filed with the Henderson County Clerk's Office. The document stated the property owners desired to amend all existing restrictive covenants applicable to Echo Lake, whether recorded or not, by rescinding, deleting, and removing all prior restrictive covenants and substituting same with the covenants contained within the filed document. The document contained provisions for rules applicable to the POA with the affairs of the POA being managed by the duly elected Board. The POA, through its Board, was specifically authorized to "sell, lease, or trade all or any part of the common area" subject to approval by at least 2/3 of a quorum of the POA members voting in a regularly called or special meeting.

In 2014, the Board entered an agreement with the Pilots Association to change the expiration date of the lease. This agreement was memorialized through a one paragraph document entitled "Lease Amendment," which stated the lease agreement between the POA and the Pilots Association dated November 1, 2003, is "hereby extended for an additional fifty (50) years from its current expiration date." No other terms within the lease were changed. At a subsequent POA meeting, the members voted to void the Board's action seeking to change the lease's expiration date. The Board refused to acknowledge the POA's rejection vote as valid.

The POA filed a declaratory judgment action seeking to have the fifty-year extension to the lease term declared void. The POA subsequently filed a traditional motion for summary judgment. Without a hearing, the trial court granted the motion. Following a hearing on attorney's fees, the trial court awarded the POA its attorney's fees in the amount of $24,500 plus additional attorney's fees in the event of an unsuccessful appeal to the court of appeals and to the Texas Supreme Court. This appeal followed.

## SUMMARY JUDGMENT EVIDENCE

In its first issue, the Pilots Association contends that the covenants and restrictions attached to the POA's motion for summary judgment is unauthenticated and is therefore not proper summary judgment evidence.

## Standard of Review

Evidence offered in response to a motion for summary judgment must be admissible under the rules of evidence to the same extent that would be required at trial. *See* TEX. R. CIV. P. 166a(f); *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). Decisions about the admissibility of evidence are left to the sound discretion of the trial court. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 42 (Tex. 1998). Accordingly, we review the trial court's evidentiary rulings for abuse of discretion, which we gauge by whether the trial court acted without reference to any guiding rules or principles. *Longoria*, 938 S.W.2d at 30.

## Analysis

The Pilots Association objects to exhibit "C" of the POA's motion for summary judgment, which is a copy of the 2010 Echo Lake Covenants and Restrictions. It contends that this 2010 document was not properly authenticated.

A copy of the 2010 Covenants and Restrictions was attached as evidence to both the POA's motion for summary judgment and the Pilots Association's response thereto. Both exhibits contain a certification page signed by the Henderson County Clerk, which identifies the documents as certified copies of the covenants and restrictions that were filed in the Henderson County public records. A copy of a document that was recorded in a public office is self-authenticating if it is certified as a correct copy by the custodian or another person authorized to make the certification. TEX. R. EVID. 902(4). As a result, the 2010 version of the Covenants and Restrictions is self-authenticating and required no further evidence to be admitted as proper summary judgment evidence.

The Pilots Association further argues that the POA failed to prove that the 2010 version of the Covenants and Restrictions was in effect in 2018. However, the Pilots Association also relied on the 2010 Covenants and Restrictions, which it attached to its summary judgment response. A party to an appeal may not complain of improper evidence offered by the other side when it introduced the same or similar evidence. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex. 1984); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 841 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *see also Laird Hill Salt Water Disposal, Ltd. v. E. Tex. Salt Water Disposal, Inc.*, 351 S.W.3d 81, 95 (Tex. App—Tyler 2011, pet. denied). Because the Pilots Association offered the same 2010 Covenants and Restrictions as summary judgment evidence, the Pilots Association has waived this complaint. We overrule the Pilots Association's first issue.

In its second issue, the Pilots Association argues that the Board had the authority to interpret and apply the covenants and that the members could not void the Board's action. In its third issue, it contends that the POA failed to establish that the "lease amendment" was a "new lease" under the covenants and restrictions.

## Standard of Review

The standard for reviewing a traditional summary judgment is well-established. The movant for traditional summary judgment bears the burden of showing the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When the movant seeks summary judgment on a claim in which the nonmovant bears the burden of proof, the movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant establishes a right to summary judgment, the burden shifts to the nonmovant to respond to the motion and present the trial court with any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). Generally, a trial court may not consider summary judgment evidence not referenced in or incorporated into the motion. *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 236 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We review the record de novo and in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order does not specify the grounds on which it granted summary judgment, we affirm the trial court's ruling if any theory advanced in the motion is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

## Applicable Law

We review a trial court's interpretation of a restrictive covenant de novo. *Air Park–Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd.,* 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.). We construe restrictive covenants in accordance with general rules of contract construction. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex. 1998). A covenant is "unambiguous as a matter of law if it can be given a definite or certain legal meaning." *Id.* (quoting *Grain Dealers*

*Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)). Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous. *Air Park–Dallas*, 109 S.W.3d at 909. Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction, but will be given their commonly accepted meanings. *Id.*

A restrictive covenant should be liberally construed to give effect to its purpose and intent. TEX. PROP. CODE ANN. § 202.003(a) (West 2014). However, doubts should be resolved in favor of the free and unrestricted use of the premises, and any ambiguity must be strictly construed against the party seeking to enforce the restrictive covenant. *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 308–09 (Tex. App.—Fort Worth 2001, no pet.); *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied).

<u>Analysis</u>

The Pilots Association argues that the Board had the exclusive authority to interpret and apply the covenants and restrictions. In that role, it contends the POA members did not have the authority to void the Board's action because the Board did not enter a new lease. Instead, it argues that the Board merely amended the lease, which was authorized by the lease's terms. In essence, the Pilots Association argues that (1) the Board, as sole arbiter of any dispute regarding the interpretation of the 2010 Covenants and Restrictions, made a final and uncontestable determination that extending the lease fifty years beyond its original term was simply an amendment to the lease, and (2) members have no authority to reject such an amendment, as opposed to the creation of a new lease beyond the original term, which does require member ratification.

The lease identifies the parties to the transaction. In those terms, the tenant is identified as the Pilots Association and the landlord is the POA. The lease further states that it can be amended in a writing signed by the landlord and tenant. However, the Covenants and Restrictions contain further procedures that must be followed. Only the POA is authorized to lease the common areas "provided that such action is approved by 2/3 of a quorum of members" at a POA meeting. Although the Covenants and Restrictions authorizes the Board to resolve matters of dispute or disagreement regarding interpretation or application of the Covenants and Restrictions, it further provides that any action taken in violation or conflict with the covenants is null and void.

The Pilots Association claims that the 2003 lease authorized the Board to amend the lease without approval from the POA. The POA argues that the "amendment" is actually an extension, which required POA approval. "Amend" is defined as "to correct or make usually small changes

5

to (something written or spoken); to rectify or make right," while an extension is defined as "the continuation of the same contract for a specified period." BLACK'S LAW DICTIONARY (10th ed. 2014). At oral argument before this Court, the Pilots Association urged that the fifty years added to the lease was both an "amendment" and an "extension." The Pilots Association further argued that only if a lease was "new" did the Board need to obtain a 2/3 approval vote from the POA membership. The argument continues that because the Board only sought to amend the existing lease rather than create a new one, the POA's approval was not required. We disagree.

The 2003 lease was for a specified term of fifteen years. The lease contained no provisions for renewing or extending the lease. While the lease provided for early termination by mutual agreement, the clear language of the lease allowed the Pilots Association's use of the common area for a private airstrip for only a fifteen-year period. When the term ended, the lease provided that the Pilots Association was to vacate the leased premises. At the end of the lease term, each party would be able to examine its position under the lease and decide whether it wished to continue the arrangement. But, any continued use would have been through a new lease subject to the same or newly negotiated terms. The Pilots Association had no authority under the 2003 lease to require the POA to allow it to exercise continued use of the private airstrip beyond November 1, 2018.

The 2010 Covenants and Restrictions required the Board to obtain member ratification for lease of common areas. This would have encompassed any continuation of the Pilots Association's use of the common area for its airstrip after the specified termination date in the 2003 lease. There is no language in the Covenants and Restrictions limiting POA approval to only "new" leases. While the lease contained a provision allowing the parties to amend the lease, the right to amend would only exist, at best, until the end of the specified lease term. Any attempt to continue the term of the lease beyond November 1, 2018, represents the creation of a new obligation upon the POA. Whether characterized as an amendment, extension, or new lease, under the plain language of the Covenants and Restrictions, any continued leasing of the common area to the Pilots Association, required a 2/3 approval from the members. *See Air Park–Dallas,* 109 S.W.3d at 909; *see also* TEX. PROP. CODE ANN. § 202.003(a)

We need not determine whether adding fifty years to the already existing lease is an amendment, extension, or both. By its terms, the Covenants and Restrictions limits the actions of the Board. Again, the Covenants and Restrictions expressly state that the POA can lease all or any part of the common area "provided that such action is approved by at least 2/3 of a quorum of

6

Members of the Association present in person or by absentee ballot at a duly called regular or special meeting of Members or in a mail ballot." And the lease identifies the POA, not the Board, as the landlord. Nowhere does it allow the Board to either initiate or alter a lease without consent from the POA. Under the plain language of the Covenants and Restrictions, the POA had every right to void the Board's action when it changed the term of the lease by adding fifty years. To conclude otherwise would impermissibly enlarge, extend, or stretch the literal terms of the covenants and restrictions to give the Board authority to which it is not entitled. *See Air Park–Dallas,* 109 S.W.3d at 909 ("[w]ords used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction, but will be given their commonly accepted meaning").[1]

Under these circumstances, we conclude that the POA established its entitlement to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *see also S.S.,* 858 S.W.2d at 380. Therefore, the trial court did not err in granting the POA's motion for summary judgment. We overrule the Pilots Association's second and third issues and need not address its fourth issue.[2]

## DISPOSITION

Having overruled the Pilots Association's first, second, and third issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered November 14, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[1] Because we have determined that characterizing the extension of the lease term beyond November 1, 2018, as either an amendment, extension, or new lease is not controlling, we need not decide the Pilots Association's assertion that the Covenants and Restrictions gave the Board the exclusive right to interpret its action as an amendment which did not require a 2/3rds approval vote of the POA membership. *See* TEX. R. APP. P. 47.1.

[2] In issue four of its brief, the Pilots Association argues that the attorney's fees award was unreasonable and unsupported by the evidence. However, at oral argument, the Pilots Association conceded that the award was supported by sufficient evidence at trial and stated that they only contest the attorney's fees award should we determine the trial court erred in granting summary judgment. Since we have determined the trial court did not err, we need not address the attorney's fees issue. *See* TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 14, 2018**

**NO. 12-17-00343-CV**

**ECHO LAKE PILOTS ASSOCIATION, INC.,**
Appellant
V.
**ECHO LAKE PROPERTY OWNERS ASSOCIATION, INC.,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. CV16-0355-173)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **ECHO LAKE PILOTS ASSOCIATION, INC.**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*