In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00173-CV

_____

**JULIE L. GRAVES AND LOIS ST. PÉ, INDIVIDUALLY AND AS CO-TRUSTEES OF THE LOIS ST. PÉ REVOCABLE 2012 TRUST (UNDER TRUST DATED SEPTEMBER 24, 2012), Appellants**

**V.**

**LONE STAR NGL PIPELINE LP, Appellee**

**On Appeal from the County Court at Law**
**Liberty County, Texas**
**Trial Cause No. CON-149**

**MEMORANDUM OPINION**

Julie L. Graves and Lois St. Pé, Individually, and as Co-Trustees of the Lois St. Pé Revocable 2012 Trust (collectively "Landowners"), appeal the trial court's denial of their plea to the jurisdiction and motion to dismiss, as well as the granting

1

of Lone Star NGL Pipeline LP's motion for partial summary judgment.[1] In this permissive interlocutory appeal, the Landowners, in a single issue, ask whether the trial court erred by denying their plea to the jurisdiction and granting Lone Star's traditional motion for summary judgment when, "after three opportunities to cure the legal insufficiency, [Lone Star] presented no evidence that its governing body either determined necessity or delegated authority to exercise eminent domain."[2] *See* Tex. R. App. P. 28.3. We affirm the trial court's orders.

## I. Background

Lone Star initiated condemnation proceedings against the Landowners in the County Court at Law of Liberty County. *See* Tex. Prop. Code Ann. § 21.012 (West 2014). Lone Star sought to condemn a portion of the Landowners' property in Liberty County for a permanent easement to construct its Lone Star Express Pipeline (the "Pipeline"). The Pipeline commences in Baden, Texas, north of Midland, and terminates in Mont Belvieu, Texas. The Pipeline is to operate as a common carrier transporting natural gas liquids.

---

[1] The condemnation cases filed against Julie Graves and Lois St. Pé were consolidated, and Graves has since been named as the representative for the trust.

[2] Lone Star states the issue is properly framed by asking, "In granting Lone Star's Traditional Motion for Summary Judgment and denying the Landowners' Plea to the Jurisdiction, did the trial court correctly conclude that Lone Star conclusively established that its governing body had properly determined the necessity of the taking?"

Lone Star is a wholly owned subsidiary of Energy Transfer. David Runte ("Runte"), an engineer employed by Energy Transfer, was the project manager for the Pipeline. Runte testified in his deposition that he began working on the Pipeline project beginning in August 2014. Runte testified they employed Willbros Engineering to conduct the front-end engineering and design study ("FEED study") for the project, which entailed routing and cost estimates. A large part of the FEED study was to determine routing of the Pipeline. According to Runte, the FEED study considered multiple factors in determining the route. Willbros Engineering utilized a proprietary in-house tool called PPRO, which expedited pipeline routing options. Runte explained that PPRO has the "vast majority of all the other utilities and rights-of-way and infrastructure rights-of-way embedded into a Google Earth based computer platform. . . .[I]t calculates and provides the best routing for staying [ ] close to existing corridors[.]" Runte further testified that after receiving the PPRO output, Lone Star's

> project team evaluated the results to determine the best route that would take [them] from Baden to Mont Belvieu and still hit the receipts and the deliveries along the path of the pipeline that avoided, minimized, or lessened . . . impacts to residences, biological, cultural, archaeological [factors] . . . . [T]hat's what determined the final route that we as a group and me as the general manager of the project approved and decided on.

Once they completed the FEED study and reviewed the PPRO output and proposed routing, the data was put into a detailed KMZ map. That map was attached

3

to a "Consent of Member in Lieu of a Meeting" ("Consent") approving the Pipeline, and on October 27, 2014, that Consent was signed by Kelcy Warren ("Warren"), the Chief Executive Officer of Lone Star NGL Asset Holdings II LLC ("the Company"). The Company is the sole member of Lone Star NGL Asset GP LLC ("Lone Star LLC"), and Lone Star LLC is the sole general partner of Lone Star NGL Pipeline LP ("Lone Star").

The Landowners were unhappy with Lone Star's chosen route. In the initial offer letter, the route travelled diagonally through their properties, as opposed to following the property line around the perimeter which the Landowners preferred. The parties negotiated, re-surveyed the property, and attempted to adjust the location of the route. Ultimately, they were unable to agree, and Lone Star began condemnation proceedings.

The Landowners objected to an award of damages by special commissioners. The Landowners also filed a plea to the jurisdiction and a motion to dismiss in support of its plea, which was amended several times. In their plea to the jurisdiction and accompanying motion to dismiss, the Landowners complained Lone Star failed to establish necessity as a threshold matter, because the determination contained in its Consent was not valid as it was not executed by someone with authority to do so. Lone Star filed a combined partial motion for summary judgment arguing that it was

4

entitled to summary judgment findings that: (1) it is a common carrier vested by law with the right and power of eminent domain; (2) it strictly complied with all applicable statutes and has fully and timely satisfied all prerequisites for the condemnation of the easements; (3) its Consent found and determined the easements were for a public purpose and necessary; (4) it did not abuse its discretion and act fraudulently or in bad faith, or in an arbitrary and capricious manner with respect to its determination of necessity; and (5) the only issue remaining for determination is the amount of just compensation due the Landowners.[3] The trial court denied the Landowners' plea to the jurisdiction and motion to dismiss, but it granted Lone Star's motion for partial summary judgment after overruling all objections to both parties' evidence.

The trial court found

[t]he issue of whether the Court has subject matter jurisdiction to consider the condemnation claims asserted by Lone Star is a legal issue. As part of its finding that the Court has jurisdiction over the condemnation claims, the Court has determined that Lone Star properly declared the necessity of the taking.

---

[3] Landowners filed counterclaims for trespass, nuisance, and inverse condemnation. However, neither Lone Star's motion for partial summary judgment nor the parties' briefs on appeal address these counterclaims. Therefore, we make no determination in this opinion as to the Landowners' counterclaims.

5

The trial court further found that "[a]n intermediate appeal from [its] Order may materially advance the ultimate termination of the litigation and significantly narrow the issues to be litigated at trial[,]" and it granted the Landowners the right to file an interlocutory appeal. *See* Tex. R. App. P. 28.3.

## II. Standard of Review

We review a trial court's grant of summary judgment *de novo*. *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015) (internal citation omitted). The moving party must prove no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We review the evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 SW.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 76 S.W.3d 193, 208 (Tex. 2002)). If a movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

6

The Landowners' plea to the jurisdiction and motion to dismiss and Lone Star's summary judgment motion were effectively cross-dispositive motions, which we review under the *de novo* standard that applies to cross-motions for summary judgment; therefore, we review both motions *de novo* and render the judgment that the trial court should have rendered. *See Morello v. Seaway Crude Pipeline Co.,* No. 01-16-00765-CV, 2018 WL 2305541, at *7 (Tex. App.—Houston [1st Dist.] May 22, 2018, no pet.) (citing *Harris Cty. Hosp. Dist. v. Textac Partners I*, 257 S.W.3d 303, 311–15 & n.11 (Tex. App.—Houston [14th Dist.] 2008, no pet.)).

## III. Analysis

### A. Jurisdictional Plea

Subject matter jurisdiction cannot be waived. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000). In the present case, Lone Star cites to provisions in the Natural Resource Code, Business Organizations Code, and Property Code, invoking its power to exercise eminent domain and the procedures it must follow in exercising that right. *See* Tex. Nat. Res. Code Ann. § 111.019 (West 2011) (conferring the "right and power of eminent domain" on common carriers); Tex. Bus. Orgs. Code Ann. § 2.105 (West 2012) (specifying types of business entities that can qualify as common carriers, i.e., corporations, general partnerships, limited partnerships, limited liability companies, or other combination of those entities

7

"engaged as a common carrier in the pipeline business . . ."); Tex. Prop. Code Ann. § 21.012 (outlining requisites of condemnation petition). Historically, several intermediate appellate courts have treated the requirement for a board resolution as jurisdictional. Whether a common carrier's governing board made a declaration of necessity was treated as a prerequisite to jurisdiction. The parties do not dispute that Lone Star is a common carrier. The challenge in this proceeding is whether there was a valid declaration that the taking was necessary. We would point out that Lone Star, as the common carrier in this case, did not attempt to acquire "unchallengeable condemnation power . . . merely by checking boxes on a one-page form and self-declaring its common-carrier status." *See Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC*, 363 S.W.3d 192, 204 (Tex. 2012). Rather, here, Lone Star presented evidence it already had a contract with an unrelated entity to ship that entity's product through the Lone Star Express Pipeline for a tariff. *See Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 566 n.5 (Tex. App.—San Antonio 1998, pet. denied) ("Proof that the board made a determination of necessity is also required for the trial court to have jurisdiction[.]"); *Bevley v. Tenngasco Gas Gathering Co.*, 638 S.W.2d 118, 122 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.) (condemnor "failed to show that its board of directors determined the necessity of the taking of the [landowners'] property by formal resolution or otherwise[]" and sustaining

8

landowners' jurisdictional points); *Maberry v. Pedernales Elec. Coop.*, 493 S.W.2d 268, 271 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.) (concluding condemnor failed to prove the trial court had jurisdiction by introducing evidence that the corporation made a declaration of convenience and necessity).

In the case of *Hubenak v. San Jacinto Gas Transmission Co.*, the Texas Supreme Court examined whether the "unable to agree" requirement contained in section 21.012 of the Texas Property Code implicates subject matter jurisdiction. 141 S.W.3d 172, 179 (Tex. 2004); *see also* Tex. Prop. Code Ann. § 21.012. The Court explained that earlier opinions differentiated between common-law claims and statutory claims when considering trial court jurisdiction. *See Hubenak*, 141 S.W.3d at 183. As noted by the Court, in recent years, the Court has moved away from that dichotomy between common-law and statutory actions, determining it was "antiquated and problematic." *See id.* (citing *Kazi*, 12 S.W.3d at 76). In concluding the statutory requirements in section 21.012 were mandatory but not jurisdictional, the Court noted the "'modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.'" *See id.* at 182 (quoting *Kazi*, 12 S.W.3d at 76); *see also In re Elec. Transmission Tex., LLC*, No. 13-15-00423-CV, 2015 WL 6759238, *8 (Tex. App.— Corpus Christi Nov. 2, 2015, no pet.) (orig. proceeding, mem. op.) (citations

9

omitted) (noting the requirements of section 21.0113 are not jurisdictional); *City of Rosenberg v. State*, 477 S.W.3d 878, 880 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (determining statutory requirement of bona-fide-offer was not jurisdictional); *Bd. of Regents of Univ. of Hous. Sys. v. FKM P'ship, Ltd.*, 178 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2005, pet. granted) (*FKM I*) *affirmed by FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hou. Sys.*, 255 S.W.3d 619 (Tex. 2008) (*FKM II*).

At least two of our sister courts have gone so far as to note the "question whether the bringing of [a condemnation] suit was authorized is not jurisdictional, and if authorization is challenged, [it] may be decided by the court in usual litigation procedures." *See Lin v. Hous. Cmty. Coll. Sys.*, 948 S.W.2d 328, 335 (Tex. App.—Amarillo 1997, writ denied); *see also Russell v. State*, No. 02-14-00178-CV, 2015 WL 1743745, *4 (Tex. App.—Fort Worth Apr. 16, 2015, no pet.) (mem. op.). In other situations, the Texas Supreme Court has held that statutory requirements should not be considered jurisdictional unless the governing statute explicitly states it is a jurisdictional prerequisite to suit. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307–08 (Tex. 2010) (in the context of the filing deadline contained in Labor Code section 21.256); *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009) (noting in a police officer termination case where city failed to notify officer

of appeal limitation and Court began "with the presumption that the Legislature did not intend to make notice under [Local Government Code] section 143.057(a) jurisdictional; a presumption overcome only by clear legislative intent to the contrary").

In *FKM II*, the Texas Supreme Court conducted a jurisdictional analysis when FKM claimed the University did not have public necessity for taking a smaller tract of land under section 111.38 of the Texas Education Code as jurisdictional. 255 S.W.3d at 628–31 (discussing whether the university had a public necessity for the taking, plea to the jurisdiction, and motion to dismiss); *see also* Tex. Educ. Code Ann. § 111.38 (West 2002). This provision of the Education Code allows a university to exercise eminent domain to acquire "any land necessary and proper for carrying out its purposes as a state-supported institution of higher education." Tex. Educ. Code Ann. § 111.38. The Natural Resources Code provision allows a common carrier to exercise eminent domain to condemn land "necessary for the construction, maintenance, or operation of the common carrier pipeline." Tex. Nat. Res. Code Ann. § 111.019. These statutes confer the power of eminent domain to certain entities, which is distinct from section 21.012 of the Property Code outlining the requirements for initiating a condemnation proceeding and the contents of a condemnation petition. *Compare id.*, *with* Tex. Prop. Code Ann. § 21.012.

11

In a recent Houston Court of Appeals case, *Morello*, there was an attack on the necessity determination similar to the one before us. *See Morello*, 2018 WL 2305541, at *1. Although *Morello* treated the necessity determination as jurisdictional, the Court noted the parties in that case *agreed* that it was jurisdictional. *See id.* n.1 (emphasis added). That is not the situation here as the Landowners and Lone Star disagree on this point.

We examine the public necessity element in light of the statute and in accordance with existing applicable precedent. We note a condemnor may provide evidence of implied ratification by its governing body in the absence of an express authorization, constituting an affirmative act that established the necessity to condemn. *See Laird Hill Salt Water Disposal, Ltd. v. E. Tex. Salt Water Disposal, Inc.*, 351 S.W.3d 81, 90 (Tex. App.—Tyler 2011, pet. denied). Additionally, in condemnation cases, by concluding other statutory requirements are mandatory rather than jurisdictional, courts have directed that abatement, rather than dismissal, is the appropriate procedure when a party has failed to meet the governing statutory provision. *See Hubenak*, 141 S.W.3d at 184. In those situations, courts have remanded the matter to allow the parties to provide evidence meeting their statutory burden. *See id.* While *Hubenak* specifically addressed the "unable to agree" statutory requirement, the rationale employed in *Hubenak* is equally applicable to the situation

12

before us. Utilizing the rationale in *Hubenak*, we conclude it might be argued that a necessity declaration is not jurisdictional. Nevertheless, for purposes of this appeal, we will assume without deciding, the determination of necessity is jurisdictional. Because we have determined the Consent executed by Warren was duly authorized or ratified by Lone Star, and that Lone Star made a valid determination of necessity, the trial court did not err in denying the Landowners' plea to the jurisdiction and motion to dismiss.

**B. Summary Judgment, Determination of Necessity, and Consent**

The Landowners challenge the validity of the determination of necessity by contending on appeal Lone Star "presented no evidence that its governing body either determined necessity or delegated authority to exercise eminent domain." Their attack focuses on the authority of the CEO to sign the Consent and the relationship of the various Lone Star entities as well as their predecessors in interest.

> [A] corporation, general partnership, limited partnership, limited liability company, or *other combination of those entities* engaged as a common carrier in the pipeline business for the purpose of transporting oil, oil products, gas . . . or other mineral solutions has all the rights and powers conferred on a common carrier by Sections 111.019-111.022, Natural Resources Code.

Tex. Bus. Orgs. Code Ann. § 2.105 (emphasis added). The Texas Natural Resources Code provides that in exercising their powers of eminent domain, common carriers "may enter on and condemn the land, rights-of-way, easements, and property of any

13

person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline." Tex. Nat. Res. Code Ann. § 111.019(b). Additionally, if an entity with eminent domain authority desires to acquire property for public use and cannot agree with the landowner on damages, the entity may file a condemnation petition that must: (1) describe the property to be condemned; (2) state the public use of the property with specificity; (3) state the name of the property owner, if known; (4) state that the entity and property owner are unable to agree on damages; (5) state that the entity gave the property owner a landowner's bill of rights statement; and (6) state that the entity made a bona fide offer to acquire the property from the property owner voluntarily. Tex. Prop. Code Ann. § 21.012 (a), (b).

"As for necessity, unless a statute requires affirmative pleading and proof of that element, necessity is presumed from 'a determination by the condemnor of the necessity for acquiring certain property.'" *Whittington v. City of Austin*, 174 S.W.3d 889, 898 (Tex. App.—Austin 2005, pet. denied) ("*Whittington I*") (quoting *Hous. Auth. of City of Dall. v. Higginbotham*, 143 S.W.2d 79, 88 (Tex. 1940)). A taking may be nullified by judicial review if a condemnor's decision was fraudulent, in bad faith, or arbitrary and capricious. *See City of Austin v. Whittington*, 384 S.W.3d 766, 777 (Tex. 2012) ("*Whittington II*") (citation omitted). Generally, a resolution by the board of directors of a corporation with the power of eminent domain is the proper

14

method of determining and declaring public necessity. *Laird Hill*, 351 S.W.3d at 87–88 (citing *Whittington I*, 174 S.W.3d at 903); *Anderson v. Clajon Gas Co.*, 677 S.W.2d 702, 704 (Tex. App.—Houston [1st Dist.] 1984, no writ); *see also TC&C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.*, No. 10-16-00134-CV, 2017 WL 7048923, *9 (Tex. App.—Waco Dec. 20, 2017, pet. filed) (mem. op.). A condemnor has the burden to show "the governing body, the board of directors, or *other authority having power to speak*" made a determination of necessity. *Laird Hill*, 351 S.W.3d at 88 (quoting *Maberry*, 493 S.W.2d at 271). However, a board resolution is not the only way to establish that a condemnor's governing body determined necessity; it can be shown through other evidence. *See Farabi, Inc. v. Harris Cty.*, No. 14-13-00443-CV, 2014 WL 3698451, *5 (Tex. App.—Houston [14th Dist.] July 24, 2014, pet. denied) (mem. op.); *Laird Hill*, 351 S.W.3d at 88 ("[E]vidence of other 'affirmative acts' may permit the condemnor to establish that they have made a necessity determination." (citations omitted)).

On October 27, 2014, Warren, CEO of the Company executed the Consent, which contained a declaration of necessity. The Consent outlined the relationships of the various Lone Star entities as follows:

> The undersigned LONE STAR NGL ASSET HOLDINGS II LLC, a Delaware limited liability company (the "Company") being the sole member of LONE STAR NGL ASSET GP LLC, a member managed Delaware limited liability company ("Lone Star LLC") which

15

is acting as the sole general partner of LONE STAR NGL PIPELINE LP ("Lone Star"), a Delaware limited partnership, and *acting without and in lieu of a meeting, does hereby unanimously consent to the adoption of the following resolutions*, which will constitute the actions of the Company, being the sole member of Lone Star LLC which is acting as the general partner of Lone Star[.]

(Emphasis added.) The Consent further states the following resolutions are adopted:

WHEREAS, the Company, being the sole member of Lone Star LLC which is acting as the general partner of Lone Star, *hereby finds and determines that public convenience, public use and necessity* requires the location, construction, operation and maintenance of common carrier liquids pipeline facilities in Midland, . . . Liberty and Chambers Counties, Texas, for the transportation of natural gas liquids; and

WHEREAS, Lone Star operates and maintains common carrier liquids pipeline facilities in various counties in Texas, and will own, operate and maintain additional common carrier liquids pipeline facilities in Midland, . . . Liberty and Chambers Counties, Texas, and in connection therewith, the Company being the sole member of Lone Star LLC which is acting as the general partner of Lone Star *hereby finds and determines that public convenience, public use, and necessity require and that it is necessary and in the public interest* for the Lone Star to enter upon, appropriate, take, acquire, hold and enjoy, by purchase or condemnation, permanent easements and rights-of-way, and temporary construction easements, as are necessary for: (i) the construction of one or more common carrier liquid pipeline facilities, . . . such line or lines being identified as the Lone Star NGL Baden to Mont Belvieu Project Pipeline commencing at or near the outlet of the Baden Station at a point approximately 14.6 miles northeast of the city of Midland, Texas and extending east and southeasterly approximately 532.8 miles to the Lone Star NGL Mont Belvieu Plant located a point approximately 1.5 miles east of the city of Mont Belvieu, Texas; generally along the routes shown crosshatched on the attached Exhibit A, or as may be modified due to route changes or other unforeseen occurrences, and *that public convenience, public use and necessity*

16

*require and that it is in the public interest* for Lone Star, through one or more of the Lone Star's duly authorized officers, agents and/or attorneys to enter upon, take, acquire, hold and enjoy, by purchase or condemnation, the land, easements, rights of way, temporary construction easements, and other interests in land convenient and necessary for the location, construction, operation, repair and maintenance of said common carrier pipeline and appurtenant facilities that may be useful, necessary or convenient thereto.

NOW, THEREFORE, BE IT RESOLVED, *that public convenience, public use and necessity require that it is necessary and in the public interest* that Lone Star, through one or more of its duly authorized officers, agents, employees and/or attorneys, acquire, hold and enjoy, by purchase or condemnation, permanent easements and rights-of-way, and temporary construction easements, as described above, on, in, over, under, through and across certain lands in Midland, . . . Liberty and Chambers Counties, Texas, along the route shown cross-hatched in the attached plat.

BE IT FURTHER RESOLVED, that in the event of negotiations, to acquire the permanent easements and rights-of-way, and temporary construction easements, on, in, over, under, through or across the necessary tracts of land are unsuccessful, the officers, agents, employees and/or attorneys of Lone Star, be, and each individually is authorized in the name and for and on behalf of Lone Star to institute and file or cause to be filed and instituted condemnation proceedings to acquire for Lone Star said permanent easements and rights-of-way, and temporary construction easements for the public purposes and use by Lone Star and they are further authorized to take any and all action they deem necessary or desirable, to effectuate the purpose and intent of the foregoing Resolutions.

(Emphasis added.)

The Landowners complain, "Lone Star failed to determine public necessity as a threshold matter as well as in the exercise of eminent domain authority by engaging

17

in fraud, selecting a route arbitrarily and capriciously and in bad faith." They further assert that Lone Star did not produce corporate documents relating to the authority or structure of the entities in support of the summary judgment but instead, produced the affidavit of William Healy ("Healy"), Secretary of Lone Star NGL Asset Holdings II, to prove up the consent.

The record reveals that after the Landowners asserted the specific arguments attacking the authority of the person signing the Consent and its validity, Lone Star sought and obtained permission from the trial court to supplement its summary judgment evidence twice. In its first supplementation of summary judgment evidence, Lone Star submitted the affidavit of Pipeline Project Manager Runte and attached the KMZ map dated October 1, 2014, showing the diagonal or "bisecting" route through the Landowners' property. Additional documents submitted with Lone Star's second supplementation of summary judgment evidence included corporate documents for the entities at issue, the affidavit of Healy, and Delaware statutory provisions governing LLCs.

The Consent, along with other evidence, reveals "a combination of [Lone Star] entities" engaged in the business of constructing pipelines for the transportation of natural gas liquids. *See* Tex. Bus. Orgs. Code Ann. § 2.105. The entities were organized in Delaware and agreed Delaware law would govern their agreements.

18

Included as summary judgement evidence was the affidavit of Healy, the Secretary of both Lone Star NGL Asset Holdings II LLC, which is the sole member of Lone Star NGL Asset GP LLC, and Lone Star NGL Asset GP LLC, which is the general partner of Lone Star NGL Pipeline LP. Healy's affidavit referenced and attached various corporate documents, which included the Limited Liability Company Agreement of LDH Energy Asset Holdings II LLC ("Holdings II LLC Agreement"). The Holdings II LLC Agreement revealed that Louis Dreyfus Highbridge Energy LLC was the sole member of LDH Energy Asset Holdings II LLC. Per the Holdings II LLC Agreement, as the sole member, Louis Dreyfus Highbridge Energy LLC would manage LDH Energy Asset Holdings II LLC, as well as elect officers of LDH Energy Asset Holdings II LLC. Those officers were to have certain powers useful for the day-to-day management of LDH Energy Asset Holdings II. Pursuant to the Holdings II LLC Agreement, the officers were to include a president who "shall be the Chief Executive Officer of the Company and shall have general supervision, direction, control and charge of the business and affairs of the Company[.]" Further,

> [t]he President may sign, singly or with any other Officer thereunto duly authorized by the Member, in the name of the Company deeds, mortgages, bonds, contracts, agreements, or other instruments providing for the acquisition, mortgage or disposition of property of the Company . . . and the execution of any such . . . instruments shall be valid and binding on the Company *if executed by* the President, the

19

Member, *or other Officer, each of whom shall be an "authorized person'"* within the meaning of the Act[.]

(Emphasis added.)

Subsequently, LDH Energy Asset Holdings II LLC changed its name to Lone Star NGL Asset Holdings II LLC, as evidenced by the corporate documents provided by Lone Star. The corporate documents provided show that Louis Dreyfus Highbridge Energy LLC, who was the sole member of LDH Energy Asset Holdings II LLC, assigned 100% of its interest in LDH Energy Asset Holdings II LLC to LDH Energy Asset Holdings LLC. Thereafter, LDH Energy Asset Holdings LLC changed its name to Lone Star NGL Asset Holdings LLC. Lone Star also provided a Written Consent revealing that Lone Star NGL Asset Holdings II LLC's Chief Executive Officer was Warren.

Lone Star's corporate documents include a Limited Liability Company Agreement of LDH Energy Asset GP LLC ("GP LLC Agreement") naming LDH Energy Asset Holdings II LLC as the sole Member. The GP LLC Agreement stated that LDH Energy Asset GP LLC shall be managed by the Member and provided for the designation of officers, which included a President and Chief Executive Officer, among others. The GP LLC Agreement specified that "[a]ny two or more offices may be held by the same person[,]" and these officers had the power to act on behalf

of and bind the company. A Certificate of Amendment shows LDH Energy Asset GP LLC later changed its name to Lone Star NGL Asset GP LLC.

The evidence submitted by Lone Star with its motion for partial summary judgment establishes that when the Consent was executed by Warren, he was the Chairman and Chief Executive Officer of Lone Star NGL Asset Holdings II LLC (formerly "LDH Energy Asset Holdings II LLC"), which was the sole Member of Lone Star NGL Asset GP LLC (formerly "LDH Energy Asset GP LLC"). Lone Star NGL Asset GP LLC was the General Partner of Lone Star NGL Pipeline LP (formerly "Louis Dreyfus Pipeline LP").

The Landowners argue that Lone Star had to prove the corporate documents authorized Warren, as CEO of Lone Star NGL Asset Holdings II LLC, to declare a necessity to use eminent domain "singly." We conclude based on the record before us that the trial court correctly decided there is no genuine issue of material fact that Warren had authority to sign the Consent containing the Resolutions. In their brief, the Landowners argue particularly that the LDH Energy Asset Holdings II LLC Agreement did not authorize Warren as the CEO to sign the Consent on behalf of Holdings II. The Agreement states the President "shall be the Chief Executive Officer of the Company[.]" Further, the "Written Consent of Sole Member" of Holdings II executed after the execution of Holdings II LLC Agreement formally

21

designated Warren as the CEO. The Consent was signed by Warren as CEO. Even if we assume the Holdings II Agreement does not expressly confer the authority on Warren to "singly" sign a Consent determining the public necessity to proceed with the project, other evidence clearly established that Lone Star ratified Warren's declaration of necessity contained in the Consent. For example, the deposition testimony of Runte indicates once the Consent was signed, Lone Star proceeded with the project by developing line list title searches, surveying, obtaining plats, appraising the property, and commencing negotiations with landowners. Additionally, the affidavit testimony of Healy evidences ratification on behalf of Lone Star as well accepting and acknowledging the action of its "duly authorized agents and officers." We conclude that NGL Pipeline, L.P.'s general partner, acting through its sole member, duly determined the public necessity and that the Consent form coupled with the ratification thereof by the Company sufficiently established public necessity.

The Landowners further contend Lone Star NGL Asset Holdings II LLC (formerly "LDH Energy Asset Holdings II LLC") is not the sole member of Lone Star NGL Asset GP LLC (formerly "LDH Energy Asset GP LLC"), instead, Louis Dreyfus Highbridge Energy LLC is the sole member of Lone Star NGL Asset GP LLC. We disagree. The evidence submitted by Lone Star conclusively establishes

22

Lone Star NGL Asset Holdings II LLC, and not Louis Dreyfus Highbridge Energy LLC, is the sole member of Lone Star NGL Asset GP LLC.

The affidavit testimony of Healy indicates that while Louis Dreyfus Highbridge Energy LLC is named in the first paragraph of the LDH Energy Asset GP LLC Agreement, it is a mistake. Healy's affidavit explains that elsewhere in the LDH Energy Asset GP LLC Agreement, LDH Energy Asset Holdings II LLC is listed as the sole member. Healy's affidavit also explains a subscription agreement, which was provided as evidence, further shows LDH Energy Asset Holdings II LLC subscribed for a 100% membership interest in LDH Energy Asset GP LLC.

Moreover, the Landowners complain an officer signed the Consent, not the member, and nothing grants any agent, manager or officer the power of eminent domain. They assert the officers of Holdings II lack "express authority to authorize condemnation." "The power to determine the question of necessity to take particular land for public use under eminent domain may be validly delegated." *Phillips Pipeline Co. v. Woods*, 610 S.W.2d 204, 207 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (citing *Higginbotham*, 143 S.W.2d at 87). The Landowners argue that Warren acted unilaterally and cite *Laird Hill* for the proposition that "an individual acting as president [or CEO] does not establish either 'express or inherent authority to authorize the condemnation.'" *See Laird Hill*, 351 S.W.3d at 88. But, as

23

in the case at bar, the court in *Laird Hill* expressly examined other evidence produced by the condemnor, which included corporate bylaws and minutes of the board meeting, and ultimately concluded the "resolution, and the implied ratification of it by the board of directors, constitutes an affirmative act by [the condemnor] that established the necessity to condemn[.]" *Id.* at 90. In the present case, the evidence makes clear that the member is governed by the officers, who are authorized to act on behalf of the company. Furthermore, the Healy affidavit specifically declares that "the general partner of Lone Star NGL Pipeline LP has throughout the Lone Star pipeline project at issue delegated responsibility to officers of the general partner and their designees, including David Runte[.]" Unless otherwise provided in the LLC agreement,

> a member or manager of a limited liability company has the power and authority to delegate to 1 or more other persons any or all of the member's or manager's, as the case may be, rights, powers and duties to manage and control the business and affairs of the limited liability company. Any such delegation may be to agents, officers and employees of a member or manager or the limited liability company[.]

6 Del. C. § 18-407. The LLC Agreement will be interpreted to grant all necessary powers to the officers to conduct the affairs of the company, unless specifically proscribed. 6 Del. C. § 18-1101(b). ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements.")

24

The Landowners contend Healy's affidavit attempted to redefine the express terms of the Holdings II LLC and GP LLC agreements and must be ignored, effectively arguing the only acceptable evidence of official company proceedings were orders, resolutions, and minutes. However, nothing in the eminent domain statutes limits the ability of a condemnor to present this type of evidence, and we will not impose such an obligation here. *See Circle X Land and Cattle Co. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 865 n.5 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting that neither the *Horton* case nor *Whittington I* held that "affidavits in which qualified affiants attest to official acts are incapable of demonstrating public use or necessity"). A trial court may handle a hearing on a jurisdictional plea similar to a summary judgment hearing and is allowed to consider affidavits and other summary judgment evidence. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). Here, Healy's affidavits are consistent with the other evidence produced by Lone Star. We see no reason why they should be disregarded. We will consider all the evidence to determine if the condemnor determined condemnation was necessary. *See Farabi*, 2014 WL 3698451, at *5; *Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 685–86 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.) (noting resolution is

25

not the only method of establishing necessity, other evidence could be used to establish public use and necessity).

The Landowners also complain that the trial court improperly permitted Lone Star to supplement its summary judgment motion with documents it failed to produce in response to their requests for production. We disagree.

Rule 166a gives the trial court broad discretion in deciding whether to accept late-filed summary judgment evidence. Tex. R. Civ. P. 166a; *Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A trial court may consider late-filed summary judgment evidence "as long as the court affirmatively indicates in the record that it accepted or considered the evidence." *Id.* (citing *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [1th Dist.] 2006, no pet.). Here, the trial judge described in its order the evidence the Court considered. Additionally, Lone Star requested leave to supplement its summary judgment evidence, which the trial court granted. We cannot say the trial court abused its discretion by allowing Lone Star to supplement its evidence.

We conclude that Lone Star conclusively established that authority had been properly delegated to Warren, the CEO, and the Consent contained a valid declaration of necessity.

26

## IV. Conclusion

We conclude Lone Star's Consent in Lieu of Meeting executed by Warren as the CEO of the sole member of its general partner represents a declaration of necessity. Therefore, the trial court did not err in denying the Landowners' plea to the jurisdiction and motion to dismiss, and the trial court properly granted Lone Star's motion for partial summary judgment on that issue. Accordingly, we overrule the Landowners' issue and affirm the orders of the trial court.[4]

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 10, 2018
Opinion Delivered February 28, 2019

Before McKeithen, C.J., Kreger, and Johnson, JJ.

---

[4] As previously noted, because neither party raised the Landowners' counterclaims in their dispositive motions in the trial court or on appeal, we do not address them here.