COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

MILBERGER LANDSCAPING, INC.,          §          No. 08-23-00283-CV
                    Appellant,

                                      §          Appeal from the

v.                                    §          Probate Court No. 1

THE CITY OF SAN ANTONIO,              §          of Bexar County, Texas
ACTING BY AND THROUGH THE
SAN ANTONIO WATER SYSTEM              §          (TC# 2020-ED-0021)

                    Appellee.

## **MEMORANDUM OPINION**

This is a condemnation case. Appellant Milberger Landscaping, Inc. filed this permissive appeal following the trial court's grant of partial summary judgment in favor of Appellee, the City of San Antonio, acting by and through the San Antonio Water System (SAWS). At issue in the summary judgment below was whether it was necessary for SAWS to take Milberger's property for a public purpose, including whether Milberger raised any evidence to support his affirmative defenses. We conclude that the partial summary judgment was correctly granted. The case is remanded for the fact-finder to determine the appropriate amount of compensation for the taking.

# I. BACKGROUND

Milberger owns an approximate 25-acre tract of land adjacent to Loop 1604 in San Antonio. A part of the property is used as a nursery and for retail sales, other parts are as yet undeveloped. The City of San Antonio, acting through its municipally-owned water utility, SAWS, sought to condemn 0.563 acres from that tract to create a permanent easement to place a 42-inch diameter sewer pipe; SAWS already has an easement across the property for an 18-inch pipe that it intends to abandon in place. It also sought temporary construction easements of 0.144 acres and 0.216 acres to place the new pipe. The acquisition was part of a broader plan (the E-4 Project) to upgrade and expand a longer stretch of sewer piping.

When the parties could not agree on the easement, or the proposed compensation for the easement, SAWS filed a condemnation lawsuit. The trial court appointed special commissioners who heard the matter over Milberger's objection.[1] The commissioners made an award of $230,000 to Milberger, to which Milberger objected. SAWS deposited that amount with the trial court and obtained a writ of possession (over Milberger's objection) to proceed with installation of the new pipeline. Part of the installation was accomplished by boring under the property, and part by open excavation.

SAWS then moved for partial summary judgment on all issues, other than the question of the correct amount of compensation (given Milberger's objection to the amount of commissioner's award). It did so through a traditional motion for summary judgment that sought to prove its compliance with the technical steps required for condemnation under the Texas Property Code. It also filed a no-evidence motion for summary judgment challenging three affirmative defenses that

---

[1] From the outset, Milberger objected to the condemnation suit contending that the trial court lacked jurisdiction to proceed. Milberger presented its arguments through several filings, including a motion to dismiss or abate which the trial court did not grant.

Milberger had raised: (1) fraud, (2) arbitrary and capricious actions, and (3) bad faith. Milberger's combined response to those motions frames our dispute here.

First, Milberger contended that there are fact issues about whether the pipeline was for a "public use." It alleged that the new pipeline across its property was unnecessary for public use as it would not connect to anything on the other side but would simply dead-end. Milberger questioned SAWS's decision to not to use its existing easement to lay the larger pipe. Milberger's experts also proposed a route for the sewer pipe that would run outside its property line. And Milberger claims that the sewer line was really intended to serve a yet to be built subdivision sponsored by a private developer and was for the benefit of the developer and not the public.

Second, Milberger claimed it created a genuine issue of material fact on its fraud defense. It based that defense on statements that a SAWS' employee made to a Milberger supervisor that (1) the proposed alignment of the pipeline was required by a Consent Decree between SAWS and the EPA; and (2) the alignment was necessary to keep the sewer line out of the floodplain. The veracity of those representations would become a key point in the litigation. Milberger contended the statements were false and amounted to fraud.

Third, Milberger also contended it presented sufficient evidence for its affirmative defense that SAWS actions were arbitrary and capricious. Its arguments here (as we develop more below) were that SAWS never considered better options and SAWS' stated goal for placing the new pipe outside the floodplain is belied by the extent to which the new pipe still lies in the floodplain.

Finally, Milberger asserted the defense that SAWS was acting in bad faith. Part of its argument here is that when SAWS made a statutorily required offer for the value of the taking, it omitted compensation for other damages to the remainder of the property. Milberger claims this same failing denies the trial court's jurisdiction to hear the condemnation suit.

The trial court granted both SAWS' traditional and no-evidence partial motions for summary judgment. As part of its ruling, the trial court sustained objections to some of Milberger's evidence. Following the grant of the partial motions for summary judgment, the only remaining fact issue for the jury was the amount of adequate compensation for the taking. Rather than proceed to trial on that issue, Milberger sought leave to file a permissive appeal.

## II. THE ORDER FOR PERMISSIVE APPEAL

Appellate jurisdiction over interlocutory appeals is limited by statute. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). Permissive appeals of an interlocutory order are governed by Texas Civil Practice and Remedies Code § 51.014(d) and (f), as well as Texas Rule of Civil Procedure 168 and Texas Rule of Appellate Procedure 28.3. Section 51.014(d) of the Texas Civil Practices and Remedies Code permits an interlocutory appeal of an otherwise unappealable order if the trial court's order identifies a controlling question of law on which there is substantial ground for disagreement and the appeal may materially advance the ultimate resolution of the case. *Id.*; *see also* Tex. R. Civ. P. 168.

In its order allowing an interlocutory appeal, the trial court identifies the controlling issue of law as "whether the Court erred in granting summary judgment with respect to the issues of: public use, necessity, bad faith, arbitrariness and capriciousness, and fraud." In the context of the arguments and record from the summary judgment hearing, it is apparent that the trial court's question is whether the evidence that Milberger submitted in its response is relevant to the issues of public use, necessity, bad faith, arbitrariness and capriciousness, and fraud as those terms are uniquely defined in condemnation proceedings. *Cf. Oxy USA WTP LP v. Bringas*, No. 01-22-00373-CV, 2024 WL 3349088, at *5 (Tex. App.—Houston [1st Dist.] July 9, 2024, pet. filed) (considering in permissive appeal whether evidence raised a genuine issue of material fact to

4

overcome summary judgment); *City of San Antonio by & Through City Pub. Serv. Bd. v. Spectrum Gulf Coast, LLC*, No. 13-23-00342-CV, 2024 WL 3199166, at *2 (Tex. App.—Corpus Christi–Edinburg June 27, 2024, no pet. h.) (mem. op.) (accepting for permissive appeal trial court's ruling on competing partial motions for summary judgment in breach of contract action). The order also contemplates that we would consider some of the evidentiary rulings on the summary judgement evidence.[2]

## III. CONDEMNATION

Chapter 21, titled "Eminent Domain," outlines the procedures when a public entity seeks to take a one's property through eminent domain. Tex. Prop. Code Ann. § 21.001 *et seq*. Relevant here, the Code contemplates that the condemnor will first negotiate with the landowner, culminating in a "bona fide" offer. *Id.* §§ 21.0113, 21.012(a)(6). If rejected, the condemnor files a condemnation petition in an appropriate court. *Id.* §§ 21.001, 21.012, 21.013. The trial court should then appoint "three disinterested real property owners who reside in the county as special commissioners to assess the damages . . . . " *Id.* § 21.014(a). The special commissioners hold a hearing to assess the value of the property to be condemned (and any damage to the remainder). *Id.* §§ 21.014–.015.

If any party files a written objection to the special commissioners' findings, the case proceeds to trial as would "other civil causes." *Id.* § 21.018. But during that litigation, the

---

[2] That portion of the order reads:

Be it further Ordered, that only those evidentiary rulings within the Court's order on Plaintiff's Objections to Defendant's Summary Judgment Evidence, that directly relate to the issuance of the Court's rulings on Plaintiff's No Evidence Motion for Partial Summary Judgement on Defendant's Affirmative Defenses and First Amended Traditional Motion for Partial Summary Judgment on Plaintiff's Right to Take, are appealable. To be clear only the issue of Plaintiff's "Right to Take" after proof of public use and necessity; and only the evidentiary ruling wherein the Court did not consider certain aspects of the affidavits of the evidence in the Court's consideration of the summary judgment.

condemnor may take possession of the condemned property by paying the damages determined by the special commissioners and executing a bond approved by the court to secure payment of potential additional costs that could be awarded at trial or on appeal. *Id*. § 21.021(a).

The substantive requirements for condemnation start with the Texas Constitution that commands: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person . . . . " Tex. Const. art. I, § 17. The operative words for this appeal are "public use." And under the Local Government Code, public use also requires necessity: "When the governing body of a municipality considers it *necessary*, the municipality may exercise the right of eminent domain for a public use to acquire public or private property . . . [for] any other municipal public use the governing body considers advisable." Tex. Loc. Gov't Code Ann. § 251.001(a) (emphasis added). As our Supreme Court has stated, "these provisions require the municipality to demonstrate: (1) it intends to put the property to public use (the public use requirement); and (2) the condemnation is necessary to advance or achieve that public use (the necessity requirement)." *City of Austin v. Whittington*, 384 S.W.3d 766, 772–73 (Tex. 2012).

Courts review what is a "public use" but give the condemning entities' declaration of what is a public use significant weight. *Id*. at 777 (citing *Hous. Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 83 (1940)). The *Higginbotham* court states that the condemning entities declaration of a public use is given presumptive weight and "will be binding upon the courts unless such use is clearly and palpably of a private character." 142 S.W.2d at 83. That presumption can be challenged by the property owner, and "judicial review may nullify a taking where the condemnor's decision was fraudulent, in bad faith, or arbitrary and capricious." *Whittington*, 384 S.W.3d at 777; *FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619,

629 n. 9 (Tex. 2008) ("Once the presumption of necessity arises, the defendant can contest the fact of necessity only by establishing affirmative defenses such as fraud (that, contrary to the ostensible public use, the taking would actually confer only a private benefit), bad faith, or arbitrariness.") (internal quotations omitted). Stated otherwise, "[i]n the absence of allegations that the condemnor's determinations of public use and necessity were fraudulent, in bad faith, or arbitrary and capricious, the legislative declaration that a specific taking is necessary for a public use is conclusive." *Whittington*, 384 S.W.3d at 777.

Whether a condemning entities claim of public use or necessity is fraudulent, in bad faith, or arbitrary and capricious is a question of law for the court. *Id*. at 778 (citing *Maher v. Lasater*, 354 S.W.2d 923, 925 (1962) ("the ultimate question of whether a particular use is a public use is a judicial question to be decided by the courts")). This is so because of the need for uniformity in this area of the law. *Whittington*, 384 S.W.3d at 778, n. 7 (citing the example of a condemnation for a railway line that should not be subject to one ruling for one property, but a different ruling for another property along a point-to-point route); *see also Morello v. Seaway Crude Pipeline Co., LLC*, 585 S.W.3d 1, 14 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("One rationale for the high degree of discretion afforded condemnors in their necessity determinations is that, if less deference were given and each piece of a project were scrutinized for necessity, a finding that one small piece of a larger-scale project was not necessary could derail an entire project."). These inquiries only become questions for the jury when the underlying facts are in dispute. *Whittington*, 384 S.W.3d at 778.

All of which brings us to the question posed in this permissive appeal: do the facts that Milberger presented in his summary judgment response constitute some evidence of fraud, bad faith, or arbitrary and capriciousness that could overcome SAWS' declaration that the sewer line's

placement across its property was for a public use and necessary for that use. But first, we briefly detour to address the parties' briefing on the admissibility of summary judgment evidence.

## IV. SUMMARY JUDGMENT EVIDENCE

The legislature permits permissive appeals to resolve a controlling question of law that will materially advance the ultimate resolution of the case. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d); *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022). To achieve that purpose, we should address the merits of the legal issues certified. But we also must "address[ ] all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue." *Id.* at 147. That is, the permissive interlocutory appeal statute allows an appeal from *an order*, not just an abstract question of law that the trial court might pose. "While involve[ment] of a controlling legal issue is essential to securing a permissive appeal, the statute plainly provides that it is *the order* (or, as the case may be, the relevant portion of the order) that is on appeal, and the rules of appellate procedure preclude a strict construction of issues presented on appeal." *Id.* (internal quotations and footnotes omitted) (emphasis original). Thus we exercise our discretion to also review the limited evidentiary rulings as described by the trial court. A contrary approach would not further the goal of concluding this litigation. *See id*. (stating "In the context of a permissive interlocutory appeal, giving the parties half a loaf is not better than giving them nothing; it is worse than nothing.").

We review decisions to admit or exclude evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See*

8

*State Bar of Texas v. Evans*, 774 S.W.2d 656, 658 n. 5 (Tex. 1989). Stated otherwise, if the trial court's decision lies within the zone of reasonable disagreement, we must uphold it. *Diamond Offshore Services Limited v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). The mere fact that a trial court may decide a matter within its discretion in a different manner than would an appellate judge does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d at 242.

The standards for determining the admissibility of evidence are the same in a summary judgment proceeding as at trial. *See Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018) (per curiam). Indeed, evidence presented in support of a summary judgment must be in a form that would render the evidence admissible in a conventional trial. Tex. R. Civ. P. 166a(f); *see United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam). Finally, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins.*, Co., 765 S.W.2d 394, 396 (Tex. 1989).

Milberger complains of the trial court's ruling sustaining objections to two affidavits and two depositions. We take each in turn.

### A. Affidavit of Victor Jouffray

Jouffray is a part owner and general manager of Milberger. His affidavit includes several factual assertions about the events below, but also draws several conclusions on the ultimate legal issues in the case (necessity of the taking, fraud, bad faith, arbitrary and capriciousness). The affidavit reveals that he drew some of these conclusions from statements made by his retained experts, or depositions taken in the case, or his view of how the Texas Supreme Court's *Whittington* case defines certain terms. SAWS objected to the entire affidavit "as containing self-serving, conclusory (legal and factual), speculative, hearsay, and inadmissible evidence."

The trial court sustained the objection to the affidavit in part by excluding "conclusory (legal and factual) statements made by Victor M. Jouffray throughout the affidavit that the easement is not necessary, SAWS does not have a right to take because it did not make a bona fide offer, and that SAWS acted fraudulently, arbitrarily, capriciously and in bad faith." For context, we recite some of the statements that Jouffray makes:

> I engaged the services of Harry Jewett, professional engineer, to determine if there was a way for SAWS to place its sewer line somewhere besides the middle of the Milberger property. He developed a plan with the line completely off our property, which was submitted to SAWS for consideration. SAWS rejected the plan for bogus reasons.
>
> [After recounting another engineer's view that there were three alternative routes that SAWS could have taken, Jouffray states:] For SAWS to ignore alternate routes that would cause less damage to the Milberger property is bad faith, arbitrary and capricious.
>
> I do not believe that SAWS has the right to take Milberger Landscaping, Inc.'s property for several reasons: 1. As stated above, the easement is not necessary; 2. SAWS did not make a bona fide offer for what it proposes to take; and 3. SAWS is acting fraudulently, arbitrarily, capriciously and in bad faith.

The court in making its ruling explained: "As to the conclusory--any that is his opinion, I will certainly take it into consideration for the purposes of the summary judgment. But as to any legal conclusions derived or made from his statements, that is sustained." We conclude that the trial court did not abuse its discretion in its ruling.

"Affidavits supporting and opposing a motion for summary judgment must set forth facts, not merely conclusions." *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.) (citing *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex. 1984)). The Houston Court of Appeals explained the objection this way:

> The objection that a statement is "conclusory" is an objection that is frequently made to challenge affidavits in summary judgment cases. There is much confusion about what this objection means. It does not mean that logical conclusions based on stated underlying facts are improper. That type of conclusion is proper in both lay and expert testimony. What is objectionable is testimony that is nothing more than a legal conclusion. To allow such testimony is to reduce to a legal issue a

matter that should be resolved by relying on facts. Statements of legal conclusions amount to little more than the witness choosing sides on the outcome of the case.

*Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ) (internal citations omitted). And "[a] legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment or to establish the existence of a fact in support of a motion for summary judgment." *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984).

Milberger's argument is that each of Jouffray's conclusions for the ultimate issues in this case—necessity, fraud, arbitrary and capriciousness, and bad faith—are supported by some of Jouffray's factual recitations. Thus it claims they are logical conclusions based on stated underlying facts. The problem with that reasoning here is that each of these issues, as we explain below, have distinct meanings in condemnation law. So Jouffray's "logical conclusions" could only have meaning if he identified that correct standard under which the conclusion is reached. The only standard he identifies comes from his reading of the *Whittington* case as it discussed what is arbitrary and capricious.[3] These determinations are questions of law for the court when the underlying facts are not in dispute. *Whittington*, 384 S.W.3d at 778. Jouffray's legal conclusions, therefore, are little more than a lay person's view of the issue the court is required to decide. The trial court, and this Court, have Jouffray's factual assertions before us. If those factual assertions create a genuine issue of material fact we would say so. If they do not, Jouffray cannot forestall summary judgment based on his view of the law.

We overrule Milberger's first point as the trial court did not abuse its discretion in excluding the legal conclusions in Jouffray's affidavit.

---

[3] And there, the Texas Supreme Court only recited a definition for arbitrary and capricious that the parties in the case had agreed to. The Court stated that it expressed "no opinion as the legal accuracy" of the definition, but noted any variation of it would not affect its decision in the case. *Whittington*, 384 S.W3d at 782, n. 16. Even at that, Jouffray's paraphrasing of the standard omits several components of the definition.

**B. John McIntyre's affidavit and deposition.**

Milberger attached to his summary judgment response an affidavit from one of his engineer experts, John McIntyre. And McIntrye attached a copy of his expert report to the affidavit. McIntyre's affidavit states that SAWS acted in an arbitrary and capricious manner (as defined by a quoted definition in his affidavit) by placing the 42-inch sewer line through Milberger's property rather than one of the three alternatives he proposed in his report, or by making its existing easement wider.

SAWS objected to the affidavit as "containing self-serving, conclusory (legal and factual), speculative, hearsay, and inadmissible evidence" with a footnoted objection adding the affidavit is based on "hearsay and hearsay within hearsay." The footnoted objection also incorporated additional objections set out in a motion to strike.[4] The trial court sustained the objections to McIntyre's affidavit.

For much the same reason as we discuss with Jouffray's affidavit, we conclude the trial court did not err in excluding McIntrye's affidavit. McIntrye's opinion for what is arbitrary and capricious is not grounded in the complete definition of that term that governs our review.[5]

---

[4] Milberger argues in its brief that the motion to strike focuses only the reliability of McIntyre's opinions as they relate to the damage issues. We remand this case back to the trial court for a full hearing on damages, and we expressly do not reach the issue of admissibility of any evidence, from McIntyre or others, as it may relate to damages. The trial court's order for permissive appeal does not extend that far, nor do we view that evidence as pertinent to the issues that are before us.

[5] McIntyre affidavit recites what he "understands" is the legal standard for arbitrary and capriciousness as defined by the courts. Though not noted in the affidavit, the standard he quotes is lifted directly from *Webb v. Dameron*, 219 S.W.2d 581, 584 (Tex. App.—Amarillo 1949, writ ref'd n.r.e.) ("The word capricious means freakish, whimsical, fickle, changeable, unsteady, and arbitrary. Arbitrary is defined as fixed or done capriciously or at pleasure; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; tyrannical; despotic."). Interestingly that same court rejected a property owner's claim that the placement of a sewage disposal site was arbitrary and capricious. Like here, the property owner had retained an engineer who suggested a different location. *Id*. at 585. In rejecting the challenge, the court of appeals states many of the same principles that govern our review:

> Whatever merits the engineer's recommendation may have, it was, nevertheless, beyond the trial court's scope of authority, as it is beyond that of this court, to subject to judicial cognizance the action of the City Council in selecting a site for a sewage disposal plant. . . . A landowner may not

12

Moreover, McIntyre expressly states his opinion that SAWS acted arbitrarily and capriciously is made "from an engineering standpoint[.]" The trial court focused on this specific problem. ("It's that one part that says as an engineer I find it arbitrary and capricious when I view it against the legal definition."). We do not question that an expert can render an opinion on an ultimate issue in a case. *See* Tex. R. Evid, 704 ("An opinion is not objectionable just because it embraces an ultimate issue."); *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987) ("Fairness and efficiency dictate that an expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts."). But because it is far from clear that McIntyre employed the correct legal standard in reaching his conclusion, the trial court did not err in excluding the conclusion.

The trial court could have rejected the substance of McIntyre's affidavit for an additional reason. McIntyre proposed three alternative routes that SAWS might have used to support his claim that the one it did choose was arbitrary and capricious. But the record does not show that any of these proposed routes were presented to SAWS at the time it made the decision to condemn the property. McIntyre's report with the three options is dated December 6, 2021, while the first petition to condemn the property was filed in April 2020. Arbitrary and capriciousness is determined at the date the purchase offer is made, not some later date. *Morello v. Seaway Crude Pipeline Co., LLC*, 585 S.W.3d 1, 20 and n. 11 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)

---

object merely because some other location might have been suitable for the purpose. The selection of a site for a sewage disposal plant is a matter addressed to the sound discretion of a city's governing body; and the action of the City Council in such a matter will not be reviewed by the courts of this state unless it can be shown that the council abused its discretion by acting arbitrarily, capriciously, or fraudulently. There is nothing in the record which shows that the action of the City Council was despotic or whimsical or fraudulent or that it was not in the public interest.

*Id.* at 585 (internal citations omitted).

13

(citing *Ludewig v. Houston Pipeline Co.*, 773 S.W.2d 610, 614–15 (Tex. App.—Corpus Christi 1989, writ denied).[6]

Milberger also attached a complete copy of McIntyre's deposition to its response. SAWS objected to the addition of the deposition because "the rules simply do not permit Defendant to attach an entire deposition transcript and exhibits as summary judgment evidence." The trial court sustained that objection.

Ample authority supports the proposition that a court in deciding summary judgments has no obligation to wade through a voluminous record to marshal the non-movant's proof. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989). "In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift through voluminous [records] in search of evidence to support the non-movant's argument that a fact issue exists." *Aguilar v. Morales*, 162 S.W.3d 825, 838 (Tex. App.—El Paso 2005, pet. denied); *see also Walker v. Eubanks*, 667 S.W.3d 402, 410 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (affirming no-evidence summary judgment when the plaintiff's response did not "direct the trial court to the evidence he argued created a fact issue" or "contain any analysis of the evidence or an explanation of how his 173-page exhibit raised any issue of material fact"). If a court were to undertake an independent review of the record in search of evidence to the non-movant's claim, it would abandon its "role as neutral adjudicators and become an advocate for that party." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.).

In this transferred case, we note several Fourth Court of Appeals cases that apply this same rationale to depositions or voluminous documents attached to summary judgment responses. *See*

---

[6] Milberger did have one expert, Harry B. Jewett, III, who proposed an alignment of the pipe that was outside of Milberger's property, and which was reviewed by SAWS. We address that proposal below.

14

*Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.) ("Attaching entire documents to a motion for summary judgment or to a response and referencing them only generally does not relieve the party of pointing out to the trial court where in the documents the issues set forth in the motion or response are raised."); *Hinojosa v. Koen*, No. 04-18-00907-CV, 2019 WL 5773672, at *3–4 (Tex. App.—San Antonio Nov. 6, 2019, pet. denied) (mem. op.) (stating this same principle applied to five depositions totaling approximately 284 pages attached to a summary judgment response); *Arredondo v. Rodriguez*, 198 S.W.3d 236, 239 (Tex. App.—San Antonio 2006, no pet.) (discounting summary judgment response that included depositions and affidavits "[b]ecause plaintiffs' response did not direct the trial court to any specific portion of their summary judgment evidence, [and thus] failed to raise a fact issue sufficient to defeat appellee's no-evidence motion for summary judgment."); *Leija v. Laredo Cmty. Coll.*, No. 04-10-00410-CV, 2011 WL 1499440, at *5 (Tex. App.—San Antonio Apr. 20, 2011, no pet.) (mem. op.) (stating that because the non-movant "generally points to his 173–page deposition, but does not cite a page number or specify what acts and incidents occurred" the response failed to raise a fact issue sufficient to defeat summary judgment).

The deposition of McIntyre is attached to the response, but is never referenced, or cited for any specific proposition (unlike some other depositions). We cannot conclude that the trial court abused its discretion in sustaining SAWS' objection. And even if we did, the ruling would be harmless as no specific recitation from the deposition is cited in the response, and the trial court would not be obligated to search for the evidence.

### C. Joseph Ortega deposition

Milberger also attached the entire deposition of Joseph Ortega who was the initial project manager for the E-4 project. SAWS objected to the inclusion of the entire deposition as it did for

McIntyre's deposition. The trial court sustained the objection except for the first exhibit attached to the deposition. For the same reasons as we express for overruling Milberger's issue on McIntyre's deposition, we overrule his issue as to this deposition. Milberger's response to the summary judgment made a single reference to Ortega's deposition, and that was to mention exhibit one attached to deposition (which the trial court agreed to consider). No other specific reference from Ortega's deposition is made in the response, and the trial court was not required to hunt for any relevant fact that might be contained there. Milberger has not shown that the trial court abused its discretion in sustaining the objection to the inclusion of Ortega's deposition.

## V. DISCUSSION OF THE MERITS

The trial court framed the controlling legal question as "whether the Court erred in granting summary judgment with respect to the issues of: public use, necessity, bad faith, arbitrariness and capriciousness, and fraud." We address each of those sub-issues, keeping in mind the context in which we review this case: a summary judgment.

### A. Standard of review

The trial court granted both SAWS' traditional and no-evidence motions for summary judgment. For a traditional motion for summary judgment, the movant carries the burden to show the absence of a genuine issue of material fact such that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact on the disputed issue. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). With a no-evidence motion for summary judgment the burden is on the nonmovant to produce at least a scintilla of summary judgment evidence that raises a genuine issue

16

of material fact on the challenged element. Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); s*ee City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Under this standard, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

We review a trial court's summary judgment ruling de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

### B.  Public use

"Whether a taking is for a constitutional public use is a question ultimately decided by the courts, but we have previously stated that a legislative declaration on public use is entitled to our deference." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 182 (Tex. 2019). A public use is one that gives the "public some definite right or use in the business or undertaking to which the property is devoted." *Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 833 (1958). "It is immaterial if the use is limited to the citizens of a local neighborhood, or that the number of citizens likely to avail themselves of it is inconsiderable, so long as it is open to all who choose to avail themselves of it." *Higginbotham*, 143 S.W.2d at 83–84. That a particular individual, group, or enterprise may benefit does not negate a use's public character. *See id.* In contrast, the courts have declined to sustain a public use when land is taken solely to benefit a private entity. *See Maher v. Lasater*, 354 S.W.2d 923 (1962); *Phillips v. Naumann*, 275 S.W.2d 464 (1955).

17

Here, the legislative declaration of public use was made by the San Antonio City Council (a home rule city) through an ordinance passed on April 18, 2019 (and included in the summary judgment record). The ordinance states in part: "Public necessity for public use requires that the System, through the City of San Antonio acquire Easements" over privately owned real property "either through purchase or by the process of eminent domain for the public purpose and public use of the expansion and operation of the System[.]" The lands identified by the ordinance include Milberger's property.

Tracey Lehmann, Director of Engineering for SAWS, submitted an affidavit that explained the "E-4 Bulverde Area Sewer Capacity Relief and Storage at Loop 1604 Project" "is a necessary public project[.]" The project grows out of a Consent Decree with the United States Environmental Protection Agency and the Texas Commission on Environmental Quality that requires SAWS to update infrastructure to eliminate sanitary sewer overflows. The project increases the system's wastewater capacity and "reduce[s] inflow and infiltration, which is water getting into the wastewater system through either cracks or standing water over the top of manholes." "This plan will be the first phase of replacing [an] 18-inch water main and increasing it to 42-inch in diameter in order to handle that additional capacity and prevent overflows in this area" and "connect to existing sewer lines further to the north which will service current subdivisions to the north of Loop 1604." The E-4 project also includes upgrading and generally paralleling an existing 18-inch line with a 30-inch gravity sewer outfall, that will then flow into the new 42-inch main.

Milberger does not contest that a sewer system serves a public use. The one argument that it does raise which fits public use jurisprudence is whether the sewer project was intended to benefit a private developer. *See Maher*, 354 S.W.2d at 924 (invalidating ordinance taking plaintiff's land to create public road that would serve only one resident, noting constitution

18

prevents taking property for a private use). For that argument, Milberger claims that a private developer paid $2 million dollars towards the project because it would enable a planned residential development. But the evidence he uses for that claim showed the payment was the pre-payment of an impact fee on a different project—Project E-54. That other project removed four lift stations to reduce the risk of spills. And while the other sewer line in the E-54 project will eventually tie in with the E-4 project, SAWS would have undertaken the E-54 project even without the prepayment of the impact fee.

We contrast the sparse evidence here with what the Texas Supreme Court had before it in *City of Rowlett*. In that case the city took a private drive and extended it to connect with an adjoining development. 593 S.W.3d at 194 (appendix). The impetus for taking and extending the drive was to facilitate the development of a Sprouts grocery store that the City had actively recruited. *Id.* at 179. The economic incentive package for the development was modified to account for the City's acquisition costs of the right-of-way when the private developer was unable to secure the road for itself. *Id.* at 180. Yet the *City of Rowlett* court concluded that evidence did not negate the public use of the new road which would benefit not just the development but provide circulation between other retail locations in the area. *Id.* at 188.

In 2005, the Texas Legislature limited eminent domain so that it could not be used to: (1) confer[] a private benefit on a particular private party through the use of the property; [or] (2) is for a public use that is merely a pretext to confer a private benefit on a particular private party[.] Tex. Gov't Code Ann. § 2206.001 (b)(1),(2). But notably, this new provision was made inapplicable to wastewater projects. *Id.* at 2206.001(c)(3). That leaves intact prior case law that the pipeline can be for a public use even if it also incidentally benefits a particular individual, group, or enterprise. *See Higginbotham*, 143 S.W.2d at 83–84. But in this case, there is no evidence

19

that there was a private benefit from the pipeline project. The prepayment of an impact fee was for a different project and was made only to accelerate the timing of the project; the sponsoring witness who discussed the payment testified the other project would have proceeded even without the payment. The trial court correctly concluded that SAWS demonstrated a public use as a matter of law.

## C. Necessity

A municipal entity must also show that the condemnation is *necessary* to advance or achieve a public use. *Whittington*, 384 S.W.3d at 772–73. And like the public use inquiry, and perhaps more so, a court must give deference to the entity's finding of necessity. *Id.*[7] To overcome that finding as found in the city ordinance that we quote above (and as explained by SAWS' Chief Engineer), Milberger was required to present some evidence for one of the three affirmative defenses that the law recognizes: fraud, arbitrary and capriciousness, or bad faith. *Whittington*, 384 S.W.3d at 777 ("In the absence of allegations that the condemnor's determinations of public use and necessity were fraudulent, in bad faith, or arbitrary and capricious, the legislative declaration that a specific taking is necessary for a public use is conclusive."). We take those defenses in turn, as all three were challenged by SAWS' no-evidence motion for summary judgment.

---

[7] Of note, three dissenting justices in *City of Rowlett* argued the 2009 amendments to the Texas Constitution should cause the court to "jettison" its prior precedent that gives deference to an entity's declaration of public use. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 200 (Tex. 2019) (Blacklock J., dissenting). But the same dissenters joined in the majority's view on the necessity inquiry:

> Unlike the constitutional public use requirement, the statutory necessity requirement is textually committed to the discretion of the governmental body. Judicial deference is not just appropriate, it is required, because under the statute a municipality may exercise the right of eminent domain "when the governing body of a municipality considers it necessary," not when a court or a jury does.[citing Tex. Loc. Gov't Code § 251.001(a)] . . . I have no objection to applying the Court's burden-shifting approach and the "fraud, bad faith, and arbitrariness" analysis to the necessity question.

*Id.* at 593 S.W.3d at 200 n. 4 (Blacklock J., dissenting).

20

**(1) Fraud**

For its fraud defense, Milberger focuses on statements made by a SAWS employee to Mr. Jouffray about the need to place the new pipe across Milberger's land:

> SAWS negotiated with me for the taking of the property, but made fraudulent statements to me on several occasions, which I relied on. Specifically, SAWS repeatedly told me that the EPA was requiring the easement on the Milberger property and made statements to me like "I need to get the EPA off my back" and "the Consent Decree requires we do this." I believed these statements when they were made, but now I am aware the statements were false and the EPA is not insisting that SAWS construct the proposed sewer line across Milberger Landscaping, Inc.'s property.[8]

Joeffrey claims that had he known these statements were false, he could have gone to three of his neighbors to enlist their support to oppose the sewer line. Or he could have beat SAWS to the courthouse before the project gained the momentum that it did.

SAWS denied that it made any false statements. A consent decree does require the removal of existing sewer lines from the 100-year flood plain and creek bed as much as possible. Milberger's own expert agreed that the consent decree was applicable to Milberger's property.[9] Yet the more fundamental problem with the fraud argument—even if the statements were false and actionable—is that it assumes fraud in this context is the same as fraud in other contexts. But unique to this area of law, fraud is defined differently. As the Court said in *City of Rowlett*, "[A] showing of fraud invalidates an otherwise valid taking only when 'contrary to the ostensible public use, the taking would actually confer *only* a private benefit.'" *City of Rowlett*, 593 S.W.3d at 191

---

[8] The trial court sustained objections to the legal conclusions in Jeoffrey's affidavit, which would include here his view that SAWS made "fraudulent statements" to him.

[9] The expert wrote in an email: "Yes, we have reviewed the Consent Decree. We think that this document is clearly applicable to the Milberger property. There are two (2) specific provisions that we believe illustrate this position: [then setting out specific provisions on pages 3 and 4 of the decree]."

(quoting *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 629 n.9 (Tex. 2008) (internal quotations omitted) (emphasis added).[10]

And under that standard, Milberger's evidence does not prove fraud. It does not show that the E-4 project confers a private benefit, much less *only* a private benefit. The project serves other purposes. SAWS presented evidence that it served *existing* subdivisions North of Loop 1604. It also placed SAWS in compliance with a consent decree by removing some existing sewer lines from the flood plain and "remov[ing] existing sewer lines from the 100-year flood plain and creek bed as much as possible." Milberger's evidence and argument that under the E-4 project alignment some portion of the line is still in the flood plain is simply unavailing. In public works, as elsewhere, perfect should not be an enemy of the good.

### (2) Arbitrary and capriciousness

Milberger's arguments better align with another affirmative defense that it raised: SAWS' taking was arbitrary and capricious. There are multiple threads to this argument. First, Milberger directed the trial court to deposition testimony from Bruce Haby, the manager of corporate real estate at SAWS, that the new sewer line will "dead end" on the other side of Loop 1604 (and according to Milberger is therefore unnecessary to serve any existing use). Yet, we easily dispose of that claim because the very same testimony explained the sewer pipe was intended to connect with another project.[11] *See City of Keller*, 168 S.W.3d at 812 ("More generally, evidence cannot be taken out of context in a way that makes it seem to support a verdict when in fact it never did.").

---

[10] Milberger's view of fraud as traditionally defined is understandable and not without precedent, as that was how the lower court in *City of Rowlett* analyzed the question. As the dissenting opinion at the Texas Supreme Court explained: "In other words, the court of appeals mistakenly thought fraud meant fraud. Only a very careful examination of the precedent—skipping over the cases that make the same mistake the court of appeals made—would have revealed that, when it comes to condemnation cases, fraud really means that 'contrary to the ostensible public use, the taking would actually confer only a private benefit.'" *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 199 (Tex. 2019) (Blacklock J., dissenting).

[11] This is the testimony cited by Milberger:

Second, Milberger repeatedly urged that the 18-inch line that runs across its property has never overflowed. But one consideration for the E-4 project was a Capacity Assessment analysis that concluded the pipe segment that ran across Milbeger's property created a "capacity constraint." SAWS' communication to Milberger informed it that the upgrade to the 42-inch pipe was "due to upstream growth." Courts have held that "it is not arbitrary or capricious to base a condemnation on a reasoned prediction of future need or demand." *Circle X Land & Cattle Co., Ltd. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 864 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Even if the 18-inch pipe had not overflowed in the past, that would not preclude SAWS from increasing its size to accommodate future needs.

Third, Milberger presented some evidence of another route the sewer line could have taken which would avoid its property altogether, and it claims SAWS arbitrarily rejected that plan. Milberger postures this argument not as SAWS making the wrong choice between competing alternatives, but that SAWS picked its preferred alternative and refused to consider any other viable route for the pipeline.

We turn back to the legal standard for arbitrary and capriciousness. Several cases tell us what it is not. "Choosing the most economically feasible path for its pipeline is not evidence of

---

Q. (BY MR. DROUGHT) What does this sewer main connect to on the other side of 1604?

A. Right now it would just dead-end. There's another project that I'm--that I'm working on right now.

Q. What project is that?

A. It's called E-54. That project will take this sewer main all the way up to--oh, what's the name of the road? It's going to eliminate three lift stations over the recharge zone. It's—it's, like, four or five miles northeast. It heads in--in that direction. I can't think of the name of the road right now that it's--that it's-offhand. It will come to me here in a minute.

.        .        .

Q. (BY MR. DROUGHT) Evans, probably.

A. It's Evans.

23

arbitrary or capricious action." *Ludewig v. Houston Pipeline Co.*, 773 S.W.2d 610, 614 (Tex. App.—Corpus Christi–Edinburg 1989, writ denied). In same context, "[w]here there is room for two opinions, an action cannot be deemed arbitrary when it is exercised honestly and upon due consideration, regardless of how strongly one believes an erroneous conclusion was reached." *Id*. (citing *Brown v. Lower Colorado River Authority*, 485 S.W.2d 369, 371 (Tex. App.—Austin 1972, no writ)). Thus, the existence of a feasible alternate plan not involving the landowner's property does not constitute proof of an arbitrary and capricious action. *Id.*; *see also Wagoner v. City of Arlington*, 345 S.W.2d 759, 763 (Tex. App.—Fort Worth 1961, writ ref'd n.r.e.) ("It could not be said that condemnee has met the requisites of proof by merely introducing facts and inferences showing that alternate plans might be feasible or better adapted to the project sought to be accomplished which would not require his property[.]").

A few cases affirmatively define arbitrary and capriciousness as "willful and unreasoning action, action without consideration and in disregard of the facts and circumstances [that] existed at the time condemnation was decided upon, or within the foreseeable future." *Harris Cnty. Hosp. Dist. v. Textac Partners I*, 257 S.W.3d 303, 316 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Wagoner v. City of Arlington*, 345 S.W.2d 759, 763 (Tex. App.—Fort Worth 1961, writ ref'd n.r.e.); *see also Houston Lighting & Power Co. v. Klein Indep. Sch. Dist.*, 739 S.W.2d 508, 515 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (holding trial court did not abuse its discretion in submitting jury instruction defining "arbitrary and capricious" in this way).

SAWS' evidence in the summary judgment record includes the affidavit of Tracey Lehmann, P.E., director of engineering for SAWS. Lehmann testified that SAWS, in conjunction with a consultant and engineering firm, selected the most practical engineering and economically feasible path for upgrading the 42-inch sewer line pipeline. Lehmann averred that the current plan

24

was selected as the best of the alternative plans they studied. "The alignment of the new 42-inch sewer main going through the Milberger property was chosen as the best engineering alternative as it mostly avoids [the] flood plain as well as Texas Department of Transportation right of way along Loop 1604." This is the reason that the upgraded 42-inch sewer line bored under the Milberger property so that it would be out of a creek bed and mostly out of the 100-year flood plain.

One of Milberger's retained experts, Henry Jewett, proposed a different route that would avoid Milberger's property altogether, but placed part of the line in a TXDOT right-of-way along Loop 1604. When infrastructure is placed in a TXDOT right of way, SAWS may have to move it whenever TXDOT upgrades the highway or frontage road. Jewett also conceded that his design has a bend which can potentially restrict flow and cause clogs. Nor was he aware of the cost and could not testify that it was superior to SAWS' design. SAWS' current design relies on a gravity system where the easiest route is through the Milberger's property; Jewett's proposed route would require a more costly pressurized system. Under the consent decree, SAWS was required to remove existing sewer lines from the 100-year flood plain and creek bed as much as possible. Hewett did not know how much of his proposed plan would be out of the floodplain.[12]

As we set out above, the arbitrary and capricious defense is not a vehicle to let juries decide between competing plans for public improvements:

> Condemnors are permitted to reject viable alternative routing choices. Evidence that there was a different pipeline route on the Property that was feasible and would have benefitted Morello does not establish arbitrariness in Seaway's routing decisions. Where there is room for two opinions, an action cannot be deemed arbitrary when it is exercised honestly and upon due consideration, regardless of how strongly one believes an erroneous conclusion was reached.

---

[12] Milberger also asks why SAWS could not have used and slightly widened its existing easement across its property to place the new 42-inch line. SAWS declined that option because the existing line was in flood zone, and the newer line less so.

*Morello*, 585 S.W.3d at 23 (internal cites and quotation marks omitted). Instead, "[t]he landowner establishes its affirmative defense 'by negating any reasonable basis for determining what and how much land to condemn." *Id.* at 14 (quoting *Clear Lake City Water Auth. v. Clear Lake Country Club, L.P.*, 340 S.W.3d 27, 35 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Ludewig v. Houston Pipeline Co.*, 773 S.W.2d 610, 614–15 (Tex. App.—Corpus Christi 1989, writ denied) (holding that landowners' evidence that condemnor could have adopted different plans and taken less of their land was no evidence of arbitrary behavior if condemnor reached reasoned decision to do otherwise)). No doubt recognizing this line of cases, Milberger falls back on the claim that SAWS dug in its heals and never gave any consideration to any other plan. But on this claim, we simply find no evidence in the record.

### (3) Bad faith

Milberger's last affirmative defense, bad faith, fares no better. Citing one of our sister courts, Milberger posits that bad faith in the condemnation context occurs when the condemnor deliberately disregards a condemnee's rights. *See Laird Hill Salt Water Disposal, Ltd. v. E. Tex. Salt Water Disposal, Inc.*, 351 S.W.3d 81, 92 (Tex. App.—Tyler 2011, pet. denied). The Tyler Court of Appeals' support for that proposition is Justice Doggett's dissent in *Westgate, Ltd. v. State*, 843 S.W.2d 448, 461 (Tex. 1992) (Doggett, J., dissenting). The majority opinion in *Westgate* adds another facet to the test: "'bad faith' means more than mere negligence; it implies 'an intent to injure, or some other improper motive.'" *Westgate*, 843 S.W.2d at 459. More recently, the court in *Whittington* tested the evidence against a bad faith standard defined as "more than negligence or lack of diligence. Bad faith implies an intent to injure, or some other improper motive. Mere bad judgment does not qualify as bad faith. Rather, the Whittingtons must show that the City

26

knowingly disregarded their rights." *Whittington*, 384 S.W.3d at 786.[13] We conclude the standard requires at least an intent to injure or improper motive requirement.

In support of its bad faith argument, Milberger repackages some of its other theories that we have already addressed. Yet additionally, Milberger says that SAWS' plan left the 18-inch pipe in place which would affect Milberger's ability to later develop the property. In another section of its brief, Milberger expands on this argument to claim that SAWS' initial offer of $185,000 failed to include any sum for removing the abandoned sewer line. Nor did the offer account for Milberger's right to tap into that existing 18-inch line if it further developed its property. Lastly, when SAWS placed the line, it damaged nursery stock on the property.[14] Milberger reasons that SAWS' failure to offer anything for this damage to the remainder of the property is some evidence of bad faith.

Our record shows that Saws made an initial offer of $185,100 to Milberger in January 2020 prior to filing the condemnation. The offer was based on an appraisal report for that same amount prepared by Lynn Eckmann, MAI. The appraiser's report, the proposed easement agreements, and the Texas Landowner's Bill of Rights were all attached to the offer. Milberger did not allow Ms.

---

[13] The Court noted, however, that it expressed no opinion as the "complete accuracy" of that definition, but concluded any variations would not affect its decision that the Whittingtons failed to submit any evidence to sustain a bad faith finding. *Id.* at n.15.

[14] For these same reasons, Milberger's brief separately argues that SAWS failed to make a bona fide offer which it claims creates a fact issue over whether SAWS traditional motion for summary judgment should have been granted. The focus of that affirmative motion was to challenge the trial court's "jurisdiction requisites" to hear the condemnation suit. The petition in a condemnation case is required to plead six predicate matters, including that "the entity made a bona fide offer to acquire the property from the property owner" as set out in § 21.0113. Tex. Prop. Code § 21.012 (1)–(6). Milberger contends the failure to include any amount for the damages to the remaining property means the offer was not bona fide. We first note that the trial court's jurisdiction to hear the case is not one of the controlling issues that was identified in the permissive appeal order. And even were we to consider the jurisdictional issue to satisfy ourselves of our own jurisdiction, the one court that squarely addressed this issue rejected the contention. *City of Rosenberg v. State*, 477 S.W.3d 878, 880 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 183 (Tex. 2004) (holding that failure to engage in pre-condemnation negotiations was not a jurisdictional defect). Thus we consider the bona fide offer evidence only as it might relate to the defenses at issue in the no evidence motion for summary judgment.

Eckmann onto its property for an appraisal inspection, nor did it make a counteroffer. SAWS then resent the same offer as its final bona fide offer.

Milberger does not show that omitting an amount in the initial offer for leaving the 18-inch pipe in place establishes bad faith for the condemnation. The omission does not by itself show an intent to injure Milberger or improper motive. The law does not require a perfect symmetry between the offer and the damages that may eventually be found in a condemnation proceeding. *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 191 (Tex. 2004) ("Generally, it is sufficient that the parties negotiated for the same physical property and same general use that became the subject of the later eminent domain proceeding, even if the more intangible rights sought in the purchase negotiations did not exactly mirror those sought or obtainable by condemnation."); *City of Dallas v. Pacifico Partners, Ltd.*, 289 S.W.3d 371, 381 (Tex. App.—Dallas 2009, no pet.) (rejecting similar claim that an offer was insufficient because it did not address purchasing fixtures or air and subsurface rights). Moreover, the trial court was clear that any omission of a damage item from the final offer could be addressed by the jury that hears the damage claim. Finding no evidence of an intent to injure or improper motive, we agree with the trial court's grant of the partial summary judgment on this defense.

## VI. CONCLUSION

We conclude that the trial court did not abuse its discretion in making the evidentiary rulings that it did, and based on the summary judgment record, the trial court correctly granted partial summary judgment for SAWS. The case is remanded for a trial on the proper amount of compensation for the taking.

JEFF ALLEY, Chief Justice

December 12, 2024.

Before Alley, C.J., Palafox, and Soto, JJ.